# EXHIBIT A

**Holly E. Loiseau**
**Weil, Gotshal & Manges LLP**
2001 M Street, NW Suite 600
Washington, D.C. 20036
+1 (202) 682-7144
holly.loiseau@weil.com

October 29, 2019

Federal Bureau of Investigation
Attn: FOI/PA
Request Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843
Fax: (540) 868-4391/4997

Re:   **FREEDOM OF INFORMATION ACT REQUEST FOR DOCUMENTS
CONTAINING THE NICS STANDARD OPERATING PROCEDURES**

Dear Sir or Madam:

Pursuant to the provisions of the Freedom of Information Act ("**FOIA**") 5 U.S.C. § 522 *et seq*., our firm hereby requests on behalf of our client, The Brady Center to Prevent Gun Violence ("**Brady Center**"), that the Federal Bureau of Investigation ("**FBI**") produce copies of documents and records related to the National Instant Criminal Background Check Systems ("**NICS**") Standard Operating Procedures ("**SOPs**"), including:

1.  All complete or partial tables of contents or indexes that depict, organize, or display any SOPs relating to NICS in effect as of October 2019 ("**Category 1 Request: Scope**")[1];

2.  A full and complete (i.e., unredacted) copy of each and every current SOP relating to NICS, including any cover page, attachments, and/or exhibits thereto in effect as of October 2019 ("**Category 2 Request: Current SOPs**");

3.  A full and complete (i.e., unredacted) copy of each and every historical SOP relating to NICS (including those that have been revised and/or are no longer in effect) dating back to January 1, 2011, including any cover page, attachments, and/or exhibits thereto ("**Category 3 Request: Historical SOPs**");

**AVAILABILITY OF EXISTING NICS SOPS AND RELATED IMPLICATIONS**

In *Sanders* v. *United States*, 324 F. Supp. 3d 636 (D.S.C. 2018), the United States District Court for the District of South Carolina ordered the United States to produce "all NICS SOPs in effect in April 2015." "February 7, 2018 Order" [ECF No. 52]. Approximately one week later, the United States filed a "Notice of Compliance" certifying that it transmitted by one compact disc a

---

[1] The SOPs contained in Exhibit A appear to be part of a larger set of NICS SOPs, and the purpose of this request is, in part, to determine which SOPs from the incomplete and redacted set in the Brady Center's possession are missing or withheld.

"complete, unredacted, set" of NICS SOPs "in effect in April 2015 for *in camera* review by the Court."  "February 15, 2018 Notice of Compliance" [ECF No. 53].  Subsequently, upon the Court's review, a number of additional NICS SOPs were disclosed in the course of litigation.  *See* "November 30, 2017 Motion to Dismiss" by United States of America [ECF No. 43], "December 22, 2017 Response in Opposition to Motion to Dismiss" by Plaintiff [ECF No. 44], "March 30, 2018 Supplement to Motion to Dismiss" by United States of America [ECF No. 66] (filing and disclosing SOPs 1.3, 3.4, 5.0, 5.4.7, 5.5.3, 5.5.4, 5.5.5, 5.10, 5.16 and 12.0 as exhibits).  These publicly available SOPs are included as Exhibit A attached to this request.  Moreover, SOPs 3.4, 5.5.4, 5.5.5, and 12.0 were produced with minor to extensive redactions.  The Brady Center hereby requests that the FBI produce NICS SOPs 3.4, 5.5.4, 5.5.5, and 12.0 without redaction.

It is clear that there are a significant number of SOPs that relate to the administration of the NICS system beyond those included in Exhibit A.  Below is a non-exhaustive list that encompasses NICS SOPs identified from the document productions made in the *Sanders* case.  At a minimum, the Brady Center expects that each individual SOP listed below is responsive to at least one if not all of the Brady Center's requests.  The Brady Center hereby requests that the FBI produce each of the SOPs identified below without redaction as well as any other SOPs responsive to the Brady Center's requests.

*Additional NICS SOPs Known to Exist*:

1. SOP 3.0 (as cross-referenced in SOP 3.4)
2. SOP 3.4.1 (as cross-referenced in SOP 3.4)
3. SOP 3.10 (as cross-referenced in SOP 3.4)
4. SOP 5.4.3 (as cross-referenced in SOP 5.5.4)
5. SOP 5.5.8 (as cross-referenced in SOP 5.5.4)
6. SOP 5.6 (as cross-referenced in SOP 5.5.4)
7. SOP 5.9 (as cross-referenced in SOP 5.5.4)
8. SOP 5.10 (as cross-referenced in SOP 3.4)
9. SOP 5.15 (as cross-referenced in SOP 5.5.3)
10. SOP 5.20 (as cross-referenced in SOP 5.5.4)
11. SOP 5.2.2 (as cross-referenced in SOP 3.4)
12. SOP 5.3 (as cross-referenced in SOP 3.4)
13. SOP 5.4.5 (as cross-referenced in SOP 5.4.7)
14. SOP 5.4.9 (as cross-referenced in SOP 5.5.3)
15. SOP 5.5.8 (as cross-referenced in SOP 5.5.4)
16. SOP 5.6 (as cross-referenced in SOP 5.5.4)
17. SOP 5.6.1 (as cross-referenced in SOP 5.5.4)
18. SOP 5.7.1 (as cross-referenced in SOP 3.4)
19. SOP 5.7.2 (as cross-referenced in SOP 3.4)
20. SOP 10.1 (as cross-referenced in SOP 5.5.5)
21. SOP 11.1.2 (as cross-referenced in SOP 5.5.4)

Again, the list of 21 SOPs above is non-exhaustive – the Brady Center expects that there are far more SOPs that are responsive to the Brady Center's three categories of requests.  Indeed, given the numbering system above, it is clear that there are far greater than 21 SOPs relating to NICS.[2]

Thus, the Brady Center's expectation would be that the above SOPs and their surrounding SOPs are likely directly responsive to its requests.

## EXEMPTIONS UNDER 5 U.S.C. 552(b) DO NOT APPLY

The purpose of FOIA is to "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citations omitted). An agency must disclose agency records to any person pursuant to FOIA's § 552(a, "unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988); 5 U.S.C. § 552(a), (b)(1)-(9). "Consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (ordering disclosure of requested documents). Courts resolve all doubts in favor of disclosure. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Further, the agency challenging a FOIA request bears the burden of establishing that any claimed exemption applies. *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); 5 U.S.C. § 552(a)(4)(B).

Of the statutory exemptions under FOIA, only two exemptions are potentially relevant to the Brady Center's requests: Exemption (b)(7)(E) or Exemption (b)(5). *See* 5 U.S.C. § 552(a), (b)(1)-(9). As explained below, the documents requested by the Brady Center fall under neither exemption and therefore responsive documents should be produced without redactions accordingly. Responsive documents are requested to be produced in their entirety, including all attachments, enclosures, and exhibits. In the event that the FBI or related agency does find an exemption applies, the Brady Center respectfully requests that the FBI "carry its burden of demonstrating [that an exemption applies] by submitting detailed explanations[, such as through the use of declarations,] why any withheld documents fall within an exemption." *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016). Further, the Brady Center requests that any documents responsive to the Brady Center's requests that it determines cannot be disclosed be identified in accordance with *Vaughn* v. *Rosen*, 523 F.2d 1136 (D.C. Cir. 1975).[3] FOIA regulations provide that, if some parts of records containing the requested information fall within the statutory exemptions to mandatory disclosure, the non-exempt material shall be disclosed after the exempt material has been redacted. *See* 5 U.S.C. § 522(b); 28 C.P.R. § 16.6. Finally, if the requested records are not in the possession of the FBI or its agents, the Brady Center requests that the FBI identify all federal agencies and/or other individuals and entities believed to possess such documents.

---

[2] The list above includes SOPs in Parts 3, 5, 10, and 11 (implying that there are Parts 1, 2, 4, 6, 7, 8, 9), as well as one or two degrees of sub-Parts – indicating that there are a significant number of sub-Parts within each Part that would also be responsive.

[3] "Preparation of a *Vaughn* index requires agencies to itemize and index documents requested, segregate their disclosable and nondisclosable portions, and correlate each nondisclosable portion with Freedom of Information Act provision which exempts it from disclosure." *Ferguson v. F.B.I.*, 722 F.Supp. 1137, 1144 (S.D.N.Y.1989) (internal citation omitted). "The purpose of a *Vaughn* index is to afford a FOIA plaintiff an opportunity to decide which of the listed documents it wants and to determine whether it believes it has a basis to defeat the Government's claim of a FOIA exemption." *New York Times Co. v. Dep't of Justice*, 762 F.3d 233, 237 (2d Cir. 2014) (internal citations omitted).

5 U.S.C. 552(b)(7)(E)

There are discrete categories of law enforcement and national security records that are exempt from FOIA requirements.  Most notably, 5 U.S.C. § 552(b)(7)(E) allows agencies to withhold only "records or information *compiled for law enforcement purposes*," but only to the extent that the production of such law enforcement records or information would "disclose techniques and procedures for law enforcement investigations or prosecutions, or  would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

The Criminal Justice Information Services ("**CJIS**") division of the FBI has repeatedly insisted that NICS is not a law enforcement agency.  *See Sanders v. United States*, Civil Action No. 2:16-2356-RMG (D.S.C. 2018), ECF No. 43, Exhibit 21, p. 66, 78, 113 (noting that former Acting Unit Chief John C. Quinlan of the N-DEx Program Office stated in his deposition: "You have to be a criminal justice agency, so NICS does not have access to N-DEx because it's not a criminal justice entity within – within the FBI.").  Indeed, the NICS system itself is used to monitor a process that is entirely legal: the purchase of a firearm.  *See id.*  ECF No. 44, Exhibit 14, p. 167, 193, 195, 209-11, 215, 216 (noting that former Assistant Director Stephen L. Morris of the CJIS Division stated in his deposition: "Well, in short term, my basis would be the administration of criminal justice is when you're dealing with criminals, and not everybody that conducts a NICS transaction is a criminal. Those are law-abiding citizens trying to purchase a firearm. They're not criminals.").  *Id.* at 210-11. Thus, because (in the FBI's own view) the NICS is not a law enforcement agency—and it therefore follows that the FBI does not use NICS SOPs for law enforcement purposes—the Brady Center need not entertain the question of whether the NICS SOPs could constitute "techniques and procedures" or "guidelines" within Exemption (7)(E) as it only applies to law enforcement records.  As such, Exemption (7)(E) should be inapplicable for each document responsive to Brady Center's requests.

5 U.S.C. 552(b)(5)

In order for 5 U.S.C. 552(b)(5) to apply, the documents that an agency is withholding must be both "predecisional" and "deliberative."  *Brennan Center for Justice at N.Y. University School of Law v. Dep't of Justice*, 697 F.3d 184, 194 (2nd Cir. 2012).  The NICS SOPS are neither.  "This privilege protects recommendations, draft documents, proposals, suggestions, and other *subjective* documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (internal quotations and citations omitted) (emphasis added).  Specifically, a "document claimed to be exempt will be found outside Exemption 5 if it closely resembles that which FOIA affirmatively requires to be disclosed" such as "***statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register***" or "***administrative staff manuals and instructions to staff that affect a member of the public***." *Id.* (emphasis added).

Here, it is clear that Exemption (b)(5) does not apply.  As the Fourth Circuit recently held, "the NICS SOPs contain a set of requirements specifying the course of action an Examiner *must* take in conducting a background check," and the SOPs are "rigid," "highly structured," and "Examiners are governed by the SOPs, which mandate the standards for approval or denial of the firearm sale." *Sanders*, 937 F.3d at 329.  The mandatory nature of the NICS SOPs relied on are, therefore, not akin to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" that would

entitle them to protection from disclosure under Exemption (b)(5).  Rather, they are closer to "administrative staff manuals and instructions to staff that affect a member of the public," for which Exemption (b)(5) does not grant any protection.  As such, Exemption (b)(5) should also be inapplicable for each document responsive to Brady Center's requests.

## FORMAT AND PRODUCTION REQUESTS

The Brady Center further requests that, pursuant to 5 U.S.C. § 522(a)(3)(B), the FBI produce responsive documents in the native electronic format in which the document was created.  To the extent that the FBI is unable to produce the responsive documents in the requested format, the Brady Center requests confirmation that the record does not exist in native format and production of the documents in the following format, listed in order of the Brady Center's preference: (1) PDF format or (2) paper copy.

**The Brady Center requests that the FBI produce these documents within twenty (20) working days as required by FOIA.**  Additionally, in accordance with Section 7 of the OPEN Government Act of 2007, Pub. L. No. 110-175, and pursuant to Attorney General Holder's FOIA Memorandum of March 19, 2009, the Brady Center requests that the FBI provide the individualized tracking number associated with this request should the request take longer than 10 days to process.

## FEE WAIVER REQUEST

Pursuant to 31 C.F.R. § 1.7(d), this request qualifies for a fee waiver because the requested information will be used for a public interest purpose and not for commercial purposes.  The Brady Center is a 501(c)(3) non-profit dedicated to creating a safer America by cutting gun deaths in half by 2025.  The requested information will be used to educate the public and further this goal.  In the past, federal agencies have granted the Brady Center (previously known as the Center to Prevent Handgun Violence) a fee waiver under like circumstances. *See*, *e.g.*, *Center to Prevent Handgun Violence* v. *Dep't of the Treasury*, 49 F.Supp.2d 3, 5 (D.D.C. 1999) (acknowledging the Bureau of Alcohol, Tobacco, Firearms and Explosives's past grant of a fee waiver to the Brady Center for a similar request of government records).

The Brady Center appreciates your prompt consideration of this request. If you have any questions, or if  the Brady Center can be of any assistance in expediting this request, please contact me at (202) 682-7144.

Sincerely,

By:    /s/ Holly E. Loiseau

Holly E. Loiseau
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW Suite 600
Washington, DC 20036
T: (202) 682-7144
F: (202) 857-0940
Holly.Loiseau@Weil.com

*Attorney for The Brady Center to Prevent Gun Violence.*

cc:    Joshua Scharff
Tess Fardon
Kayleigh Golish
Alex Walsh
Amama Rasani
John Lapin

# EXHIBIT A

# SOP 1.3

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Pinckney v. United States

2:16-cv-2350

SOP 1.3  NICS INDEX

Redacted Copy

SUBJECT TO PROTECTIVE ORDER

9

FBI-00000450

**DELETION CODES**

NO REDACTIONS NECESSARY

FBI-00000451

| SOP Number: 1.3 | Page 1 of 1 | Date Last Revised: 05/07/2013 |
|---|---|---|
| Title: NICS INDEX | | |

The NICS Index contains records provided by local, state, and federal agencies regarding persons who are disqualified under federal law from receiving firearms. A valid descriptive match to the NICS Index is automatically denied. All denied transactions must be submitted to the NICS Index. Refer to SOP 5.10 Applying a Final Status. The following federal agencies submit information to the NICS Index: the Veterans Administration, Department of Defense, Bureau of Immigration and Customs Enforcement (ICE), Department of State, Department of Transportation, and U.S. Coast Guard.

SUBJECT TO PROTECTIVE ORDER

FBI-00000452

# SOP 3.4

| SOP Number: 3.4 | Page 1 of 9 | Date Last Revised: 10/28/2013 |
|---|---|---|
| **Title: DECISION CHART** | | |

NCIC
III
NICS Index
ICE
VAF/UPIN
DDF
ATFRDD

All database hits must be reviewed to determine if the purchaser is a valid match to any of the hits. If the purchaser is not a match to **any** of the hits, the transaction is a "PROCEED."

\*\*The Examiner **must** request all records that are a valid match to the purchaser.

If the purchaser is a valid match based on descriptors to any of the database hits, the Examiner must utilize the chart below to apply the appropriate status. The Examiner must enter comments in accordance with SOP 3.1 Transfer Process Comments.

Examiners must enter comments for "DENY" transactions only. All deny transactions must be submitted to NICS Index in accordance with SOP 5.10 Applying a Final Status.

## A. NCIC

If a transaction is DENIED on Transfer Process due to prohibitive information located in another database and a valid hit exists in NCIC, the NCIC Policy Hit Confirmation Procedure must be followed. An Nlets message must be submitted or a call must be made to the ORI of the entering agency. When placing a call to the ORI, the Examiner must confirm the hit and provide the agency with the FFL's name, address, and phone number. When utilizing Nlets for hit confirmation, the Examiner must follow the scripts provided within WAMS and enter "Contact Firearm Dealer" in the buyer's address field. If the Examiner is on TP, the NTN must be forwarded to their Supervisor or team leader to have the Nlets message submitted or call made to the ORI.

The chart below provides additional comments to be entered in specific situations.

SUBJECT TO PROTECTIVE ORDER

FBI-00000089

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| WARRANT | DELAY | | |
| Protection Order | DELAY | | Examiner must refer to SOP 5.2.2 |
| Military Protection Orders | PROCEED | Legal Opinion has been received indicating Military Protection Orders do not qualify under U.S.C. 922(g)(8) or a state prohibitor for firearm restrictions. Additionally, MPOs do not qualify as a state prohibitor in those states where having an active protection order is a state prohibitor. | Refer to SOP 5.2.2. |

(H)

SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| | | (H) | |



SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| (H) | | | |
| SEXUAL OFFENDER REGISTRY | DELAY | Will require research regarding the originating charge/conviction. Entry into this database alone is not prohibiting. | |
| Violent Person File Not a Valid Match<br><br>No hits in other databases or no valid hits based on descriptors in other databases. | PROCEED | | |
| Violent Person File Valid Match<br><br>Valid match in III to a record with an IFFS flag or disqualifying information and/or a valid match to a NICS Index hit. | DENY | | |
| Violent Person File Not a Valid Match<br><br>Valid match in another database with prohibitive information. | DENY | | |

SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| Violent Person File Not a Valid Match<br><br>Valid match in other databases with potentially prohibitive charges and/or additional hits in NCIC requiring research. | DELAY | | |
| Violent Person File Valid Match<br><br>No hits/valid matches in other databases.<br><br>Or<br><br>No potential prohibitors in other databases. | DELAY | | |

## B. III

If a transaction is DENIED on Transfer Process and the III record responds with Want/Flash information, the NCIC Policy Hit Confirmation Procedure must be followed. An Nlets message must be submitted or a call must be made to the ORI of the entering agency. When placing a call to the ORI, the Examiner must confirm the hit and provide the agency with the FFL's name, address, and phone number. When utilizing Nlets for hit confirmation, the Examiner must follow the scripts provided within WAMS and enter "Contact Firearm Dealer" in the buyer's address field. If the Examiner is on TP, the NTN must be forwarded to their Supervisor or team leader to have the Nlets message submitted or call made to the ORI.

SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| Record does not provide any potential prohibitors or disqualifying information | **PROCEED** | | |
| Record responds with potential prohibitors requiring further research. | **DELAY** | | |
| Record requested, but record does not respond | **DELAY** | Notify the NICS Command Center per <u>SOP 3.0</u>. | |
| IFFS Flag – Record has not responded. | **DENY** | The Examiner **must** activate the Work Pending button. The transaction will remain in the Examiner's history as a DENY. The Work Pending button remains activated until the record has responded and can be reviewed for Wants/Flashes. | Enter comments per **<u>SOP 3.1</u>**. Comments **must** indicate the Work Pending button was activated pending record response. Once the record has responded, the Examiner must enter comments indicating if there are any wants or flashes on the record. If the record contains want/flash information, comments must be updated with Nlets submission or call to ORI. |
| IFFS Flag – Record responded and does not indicate any want/flash. | **DENY** | | |

# SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| IFFS Flag – Record responded with want/flash. | **DENY** | | Comments must be updated with Nlets submission or call to ORI. |
| Disqualifying record based on Federal or state criterion. | **DENY** | Submit to NICS Index if needed. Refer to SOP 5.7.1 Federal Prohibitors Or SOP 5.7.2 State Prohibitors | |
| MANUAL RECORDS | **DELAY** | | |

**C. NICS INDEX –** All valid matches in NICS Index **must** be denied.

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| NICS Index hit for a Protection Order or Warrant | **DENY** | Nlets or phone call **must** be submitted to ORI. | Call made to (ORI) |

# SUBJECT TO PROTECTIVE ORDER

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| NICS Index hit and hit(s) in other database(s). Record in other database(s) has not responded. | **DENY** | The Examiner **must** activate the Work Pending button. The transaction will remain in the Examiner's history as a DENY. The Work Pending button remains activated until the record has responded and can be reviewed for Wants/Flashes. | Once the record has responded, the Examiner must enter comments indicating if there are any wants or flashes on the record. |
| | | | If the record contains want/flash information, comments must be updated with a call to the ORI. |

**D. ICE** – ICE results may not return on TP.

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| ICE response | Refer to <u>SOP 5.3</u>. | Additional Resource: <u>LESC Quick Reference Guide</u> | Refer to **SOP 3.1**. |

**E. VAF/UPIN** – Refer to <u>SOP 3.4.1 VAF/UPIN Decision Chart</u>

SUBJECT TO PROTECTIVE ORDER

**F. DDF** – Refer to <u>SOP 5.5.4 In-House Research</u> Section B.

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| Review of DDF does not provide enough information for a final status. | **DELAY** | | |
| Review of DDF provides enough information to apply a final status | **PROCEED or DENY** | | |
| Records do not provide any disqualifiers.<br><br>Review of DDF provides potential disqualifiers | **DELAY** | | |

**G. ATFRDD** – Refer to <u>SOP 5.5.4 In-House Research</u> Section C.

| POSSIBLE SCENARIO | STATUS | NOTES | COMMENTS |
|---|---|---|---|
| ATFRDD Valid match with possible disqualifiers | **DELAY** | | |
| ATFRDD Valid match with possible disqualifiers | **PROCEED or DENY** | | |
| ATFRDD Not a valid match with other possible disqualifiers | **DELAY** | | |
| ATFRDD Not a valid match but a final status can be applied | **PROCEED or DENY** | | |

# SUBJECT TO PROTECTIVE ORDER

FBI-00000097

# SOP 5.0

| SOP Number: 5.0 | Page 1 of 5 | Date Last Revised: 02/25/2015 |
|---|---|---|

**Title:  PROCESSING DELAY QUEUE TRANSACTIONS**

Requesting the Records
Identifying Age of Transactions
MDI
Activity Codes

Examiners must not pull and process more than one (1) transaction from the Delay Queue at a time.  This applies to processing work during regular hours, on Overtime or Queuebusting unless given direction otherwise by management.

**Determining A Valid Match**

Once ownership is assigned to the Examiner, all returned "hits" from the search will be reviewed to determine if a **valid match** has occurred.  To determine if a valid match exists, select the tab in which the "hit" occurred (the NCIC, the III, NICS Index, or the ICE) and validate whether the purchaser may be identical with the responding record. The transaction can have hits in more than one database and/or multiple hits within each database.  Check ALL of the returned records!  Compare the descriptive information of the purchaser to the descriptive information of the responding records, including alias information.  If you are not certain about the match, you can contact the FFL to try to obtain additional descriptive information.

**Note:** After reviewing the selected tabs, there may be additional numbers located at the bottom of the NCIC, III and NICS Index screens.  This will occur if there are more than 15 responses in that database.  Follow the remaining steps on each additional number located to determine if a valid match exists.

Additional NIC numbers in the NCIC Results tab:

Run each additional NIC number in WAMS to determine if any of the responding records are a valid match to the subject data.

- Select Categories
- Select Wanted Persons
- Select Query Wanted (QW)
- Enter NIC Number into the NCIC Number field
- Select Submit Data button to Query

SUBJECT TO PROTECTIVE ORDER

Additional FBI numbers in the III Results tab:

Run each additional FBI number in the III Subject Search to determine if any of the responding records are a valid match to the subject data.

- Enter FBI number in the FNU Identifier field
- Select Search button to Query

Additional NRI number in the NICS Results tab:

Run each additional NRI number in the NICS Index Maintenance to determine if any of the responding records are a valid match to the subject data.

- Go to NICS screen and select Admin
- Select NICS Index Maintenance.
- Enter NRI number and hit Tab Key to Query

If there is a question about the hit being a valid match, a Driver's License Inquiry can be run on NCIC (WAMS). This query must only be used to assist with resolving identification issues during the processing of the NICS transactions. This query, and the results of the query, must also be documented in comments.

If it is determined the hits are not valid matches, the transaction may Proceed. If a valid match exists, the Examiner will request/review the record. If the record returns no disqualifiers, the transaction may Proceed. If a disqualifier exists on the record, deny the transaction in accordance to established procedure. If the record contains a potential disqualifier, further research is required.

**Identifying the Type of Firearm**

"Purpose ID 03" stands for "Sale Other." Refer to the State Prohibitor page(s) to determine if a State Prohibitor would apply for firearms listed as "Purpose IDs 3, 7 or 11."

A pre-pawn check is conducted prior to pawning a firearm to determine an individual's eligibility to redeem the firearm. The following numeric IDs should be utilized to determine the type of pre-pawn check:

- Purpose ID "05"—"Pre-Pawn Handgun"
- Purpose ID "06"—"Pre-Pawn Long Gun"
- Purpose ID "07"—"Pre-Pawn Other"

**Note: A redemption of a handgun check can be conducted across state lines.**

# SUBJECT TO PROTECTIVE ORDER

When the transaction switches from initial to Delay, the following comment will be entered into the transaction automatically: "No MDI delivered to the FFL. Please contact the FFL with the MDI/Transfer Date XX/XX/XXXX." The Examiner must contact the FFL with the MDI/Transfer Date when the transaction is pulled from the Delay Queue and use the following MDI script:

"NTN XXXX-XXX will be delayed while the NICS continues its research. If you do not receive a response from us, the Brady Law does not prohibit you from transferring the firearm on (day/date XX/XX/XXXX)."

During times of high call volume, wait times may cause the transactions to automatically roll over to Delayed status while the FFL is holding for further review. If the Examiner on Transfer Process receives a transaction which has been automatically Delayed with the "No MDI delivered to FFL" Delay Flags and the transaction will have to be delayed for further research, additional comments must be entered. Comments must indicate the FFL was informed the transaction will be delayed and that the MDI/Transfer date was provided. For example, "Advised FFL transaction was Delayed—provided MDI/Transfer date." This ensures that when the transaction is pulled from the queue, the Examiner does not have to call the FFL to provide Delayed/MDI information when it has already been provided on Transfer Process. After the Delayed status has been applied, the transaction will have to be unassigned to the Delay Queue by a Supervisor or Team Leader, as it will remain in the Examiner's history as a Delayed NTN.

MDI date is based on three business days after the transaction was initiated. A business day is described as the 24-hour day beginning at 12:01 a.m. on days when the state offices are open, exclusive of the day the query is made. If the query is made on Friday through Sunday, the three-day clock begins at 12:01 a.m. Monday and ends at 12:00 a.m. Thursday. Federal and State holidays must be taken into consideration when determining the MDI date. If a Federal or State holiday occurs after the query is made, the holiday is not to be counted as one of the three business days after the transaction was initiated. If the query is made on Friday through Sunday, and Monday is a Federal or State holiday, the three-day clock begins at 12:01 a.m. Tuesday and ends at 12 a.m. Friday. Examiners should reference the NICS Holiday Chart to view Federal and State holidays when determining the MDI date.

**Activity Codes**

Examiners are required to log-in to the Avaya Aura Agent Desktop at the beginning of their work shift. Throughout the Examiner's shift, Activity Codes must be utilized to reflect the task being performed. The Activity Code must be changed each time the Examiner is performing a different task.

Research and Analysis Codes include:

| Break | 22 | ● Two breaks per shift (20 min. each) |
|---|---|---|

SUBJECT TO PROTECTIVE ORDER

| Lunch | 19 | • 30 min.<br>• Extended lunches approved by management |
|---|---|---|
| Meeting | 26 | • All meetings (Team, Unit, Region, Task Force, NICS Town Hall, etc.) |
| Other Examiner's History | 65 | • Processing another Examiner's transactions, working faxes, or history<br>• Processing handoff work<br>• Expired transactions<br>• Ready for Callback |
| Outage | 13 | • System down time |
| Special Project | 54 | • Running State Web Sites for other Examiners<br>• Assisting Examiners with region-specific questions<br>• Mentoring<br>• Reviewing SOP changes<br>• Task Forces<br>• SOP Team<br>• Projects<br>• Surveys |
| Team Leader Duties | 69 | • Duties performed in absence of Administrative Supervisor<br>• Supervisor duties performed at the request of the Administrative Supervisor |
| Training | 25 | • CEP Hours<br>• Team/Region Training<br>• Virtual Academy<br>• CTAP |
| Wrap-Up | 18 | • 30 min.<br>• Completing logs<br>• WebTA<br>• E-mail |
| Delay Queue R&A | 37 | • Processing delayed transactions from the R&A queue<br>• Working incoming faxes from cases in ownership |
| Queue Busting | 66 | • Processing delayed transactions from the Delay Queue as early as 6 a.m. |
| R&A OT Comp | 67 | • Processing delayed transactions from the R&A queue<br>• Quicks<br>• Do not use for phones while on OT or Comp |

# SUBJECT TO PROTECTIVE ORDER

A redemption occurs when a pawned firearm is redeemed by the pawn ticket holder. The following numeric IDs should be utilized to determine the type of redemption:

- Purpose ID "09"—"Redemption Handgun"
- Purpose ID "10"—"Redemption Long Gun"
- Purpose ID "11"—"Redemption Other"

## Requesting the Records

Examiners must request records from all of the databases when a valid match is present. The records must be requested to ensure they are a part of the NICS Audit Log. The NICS Audit Log is used by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) when they receive a Denied transaction. The ATF reviews the valid match and criminal history of the hit to determine the reason the individual was Denied. Without requesting the record, this information will not be a part of the audit log for the ATF to review.

## Identifying Age of Transactions

It is the responsibility of the NICS Section to answer all Delayed transactions within the three-business-day time frame. The NICS has established a color-coded system to determine the age of a transaction for second and third business day transactions. Transactions that are two business days old will be indicated by the color yellow. Transactions that are three business days old will be indicated by the color red. Any transaction older than three business days will convert back to white. This feature can be viewed in the Examiner's history and in the RFC Function. On the NTN Inquiry Screen, the Age Column will identify transactions by the number of business days up to five days. Transactions set to Proceed, Under Appeal, or Cancel status will reflect the age of "0" upon setting the status no matter what the age is.

## Missing Disposition Indicator (MDI)

When an Examiner pulls a transaction from the Delay queue and the Missing Disposition Indicator (MDI) has not been read on the Transfer Process or the transaction has been put in a Delayed status by the NICS (see example of caveat below), the Examiner must contact the FFL and read the MDI if the transaction was pulled on or before the third business day.

NICS has modified the NTN status from I to L for NTN XXXX-XXX

This NTN was transferred from the Call Center and a status determination was not made within 60 minutes. The new status is DELAYED due to Delay Flags.

# SUBJECT TO PROTECTIVE ORDER

# SOP 5.4.7

# Exhibit CC

| SOP Number: 5.4.7 | Page 1 of 10 | Date last revised: 07/02/2014 |
|---|---|---|
| Title: CONTROLLED SUBSTANCE (Federal Prohibitor 922(g)(3)) | | |

**Drug Arrest Within the Past Year**
**Drug Paraphernalia Within the Past Year**
**Driving Under the Influence**
**Multiple Drug/DUI Arrests Within the Past Five Years**
**Prescription Drugs/Synthetic Drugs**

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Regulation Title 27, Code of Federal Regulations (C.F.R.), Section 478.11, defines an unlawful user of or addicted to any controlled substance as "A person who has lost the power of self-control with reference to the use of a controlled substance; and any person who is a current user of a controlled substance in a manner other than prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past five years with the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year."

Evidence of possession of controlled substance within the past year could constitute a prohibitor even though the individual is actually convicted of a different offense.  In this case, a field or chemical test must have been administered to establish the substance seized from the defendant was a controlled substance (marijuana, not oregano; cocaine, not powdered sugar; paraphernalia that tests positive for a controlled substance, etc.).

SUBJECT TO PROTECTIVE ORDER

FBI-00000234

## A.    Needs More Research

### Reduced Conviction As Recent Use/Possession

An arrest for a drug offense/DUI within the past year, with a conviction for a non-drug offense, would require research to determine if a field or chemical test was administered on the person **and** was found to be positive for controlled substances, **OR** if the substance that was possessed at the time of the arrest was determined to be a controlled substance though a field or chemical test of the material.

***Examples of charges to research will include, but are not limited to, the following:  An example would be an individual arrested for possession of a controlled substance or DUI but convicted of disorderly conduct or careless driving.  Because there was an indication of a controlled substance present at the time of the arrest for the drug offense/DUI, even though the individual was convicted of a non-drug offense, the inference of current use can be drawn from the evidence of recent possession, if proven, that the drugs were in fact present at the occurrence of the offense.

### Drug Arrest Within the Past Year   (No Arrests within the Previous Five Years)

If there has been a drug arrest in the past year, without a conviction, you must determine **if** it can be proven that the individual, or the substance in his/her possession, **tested** positive for a controlled substance that has no federally accepted medical use, this would be enough to establish inference of current or recent drug use or possession.

If an individual **admits** to using or possessing a controlled substance which has no federally accepted medical use, then this is enough to establish recent use/possession.

**The LAT can assist in determining the federal legal status of the substance involved.**

**Any requests or review of an incident report or other documentation to determine whether this standard is met may be directed to the LAT.**

**The NICS will not rely on the officer's opinion that the material is a controlled substance. The NICS will only accept the material is a controlled substance once proven by a field or chemical test.**

**EXCEPTION:  in the case of prescription medication, the NICS will rely on identification (by the markings on the pills) by the Poison Control Center or a Pharmacist in lieu of a chemical test.**

SUBJECT TO PROTECTIVE ORDER

FBI-00000235

### Question of Who Actually Possessed the Drug

If an individual is arrested (no conviction present) for possession of a controlled substance found in his/her vehicle or his/her home, and there are other people present at the time of arrest, it must be established the individual in question actually possessed or admitted to ownership of the controlled substance.  It must also be established the substance is, in fact, a controlled substance (by subject's admission or field or chemical drug test).  The NICS will not rely on the opinion or speculation of the officer of which individual possessed the drug (in the case of multiple person arrests), or the identity of the substance, absent a field or chemical test or admission by person arrested, in order for it to be a disqualifier in the absence of a conviction.  If the facts cannot be established, this prohibitor will not apply.

In the case of the prescription medication's identity, the NICS will rely on identification (by the markings on the pills) by the Poison Control Center or a pharmacist in lieu of a chemical test.

### "Dismissed" on the Record or Discovered During In-house Research

**Note:**  Per ATF Chief Counsel, a "dismissed" charge **is** considered an "arrest" as stated in examples for a "pattern of use or possession" within the ATF regulation (Title 27, C.F.R., Section 478.11).

When considering current use/possession, drug offenses including DUI and drug paraphernalia offenses with a disposition of "Dismissed" posted to the criminal history record **would not** require additional research for 922(g)(3).  As a result, the prohibitor for an inference of current use/possession **would not** apply.

When considering multiple arrests within the last five years and the most recent occurring within the last year, a disposition of "Dismissed" appearing on the criminal history record (III, NCIC, NGI, Scanning or Web Site) **is** to be considered when researching federal prohibitor 922(g)(3) for multiple arrests in the past five years.

### "Dismissed" Discovered During External Research

If you are researching **for a disposition** for a drug arrest within the past year and **find** that the charge was dismissed, but also gain knowledge that the individual was positively drug tested, or the substance possessed was field or chemical tested positive for controlled substance residue, this is a disqualifier for federal prohibitor 922(g)(3) (Title 18, United States Code (U.S.C.), Section 922(g)(3))--as an inference of recent use or possession being established.

Please note you must wait for all documentation to be received, i.e., incident report, before making a final decision.

SUBJECT TO PROTECTIVE ORDER

FBI-00000236

## Disposition Terminology that is "Not a Conviction"

A conviction within the past year DOES NOT include probation before judgment, deferred prosecution, pretrial diversion, etc.  Even though a guilty plea may be involved, this is **not necessarily an admission of use of a controlled substance** and may not, by itself, be used as an "inference of current use or possession" in the past year.   Since there is **no adjudication of guilt**, these terms may not be used to satisfy the conviction example.  Arrests with such a disposition must be treated as if they had **no disposition** at all (open arrest) and the incident report needs to be obtained to determine inference or current use or possession.  These **are examples only,** not a complete listing, but are described on the state terminology pages.

If one of the terms listed above is within the past five years and if the person is currently serving the probationary period (current active probation), this is still considered an open arrest and will be used in the multiple drug arrest scenario.

If the dismissal is posted to the record, or if completion of terms, automatic dismissal or discharge time frame, etc. has been reached (refer to the state terminology page for specifics as to when the term is no longer a conviction), and the arrest is in the past year, it cannot be used as a prohibition for Title 18, U.S.C., Section 922(g)(3) for an inference of current use/possession.

If the dismissal is posted to the record, or if completion of terms, automatic dismissal or discharge time frame, etc. has been reached and there are multiple arrests within the past five years and an arrest within the past year, this can be used as a prohibition for Title 18, U.S.C., Section 922(g)(3) for multiple arrests.

## During Course of Research

If you are researching another charge and discover a drug charge or a drug paraphernalia charge**, further research must be conducted.**

Paraphernalia can be used as inference of current use/possession **IF** you gain knowledge that drugs were present or used at the time of an arrest.  For example, the paraphernalia tested positive for drug residue.  You must make sure it is proven through a field or chemical test, the "drug" was a controlled substance **AND** it was the subject's drug.  This applies whether the arrest was for drugs or not.

SUBJECT TO PROTECTIVE ORDER

FBI-00000237

## Drug Paraphernalia Within the Past Year

If you have an arrest for drug paraphernalia within the past year, you **must research it.**

Drug paraphernalia is **not** a drug charge within the meaning of Title 18, U.S.C., Section 922(g)(3), the federal drug prohibitor. Paraphernalia charges can only be disqualifying if the residue was subjected to a field or chemical test and the residue tested positive as a controlled substance within the past year, and was in the actual physical possession of the offender. If the paraphernalia is found in his/her vehicle or his/her home, and there are other people present at the time of arrest, it must be established the individual in question actually possessed or admitted to ownership of the controlled substance.

A drug paraphernalia charge outside the past year **cannot** be used in the multiple drug offenses in the past five year scenario.

If you are researching another charge and discover a drug paraphernalia charge, the drug paraphernalia cannot be used as a disqualifier as an arrest within the past year **unless** the paraphernalia has **field or chemically** tested positive for residue of a controlled substance.

Please be cognizant of those states in which drug paraphernalia charges may meet federal criteria for prohibitor 922(g)(1).

Example: Maryland drug paraphernalia. If in doubt, contact LAT.

## Driving Under the Influence (DUI)/Public Intox, Etc.

In the majority of the states, DUI statutes include driving under the influence of drugs. When researching DUI offenses for federal prohibitor 922(g)(3) which can include controlled substances or alcohol, which is not defined as a controlled substance under Title 21 U.S.C., and Title 21, C.F.R., part 802, please refer to the statute of the offense, state information pages, or the LAT to determine if the offense could possibly include controlled substances.

Due to numerous inquiries on how far back DUI (of controlled substances) charges must be researched, the NICS Management determined that research must be conducted on DUIs with no dispositions that have occurred within the past **two** years only; DUI convictions within the past year; or if you have a DUI/Drug conviction that is under current active probation only. Research includes requesting the disposition **and** police report. The exception would be the multiple drug/DUI arrests within the past five years.

SUBJECT TO PROTECTIVE ORDER

FBI-00000238

## Multiple Drug/DUI Arrests Within the Past Five Years

If multiple DUI offenses and/or a DUI and a Drug offense are listed as arrests in the past five years, research must be conducted to determine if the DUI offense(s) was/were drug or alcohol related. Additional research includes obtaining a police report and disposition information for the DUI offense(s). This, also, applies to any charge that is not exclusively alcohol related (ex. public intoxication).

Evidence of multiple drug arrests within the past five years, the most recent occurring in the past year, **does** qualify under federal prohibitor 922(g)(3). If any of the drug/DUI arrests within the past five years (or the last year) are dismissed, that particular offense **can** be considered as part of the pattern of use in determining whether a disqualifier exists under federal prohibitor 922(g)(3).

If an arrest within the past year/five years shows a dispositional term that, once completed, is not a conviction per the specific state's terminology page, refer to section entitled "Disposition Terminology that is Not a Conviction" above.

If information has been sought on a drug/DUI charge, or a drug test result, but has not been returned to the NICS, or the agency refuses to provide the necessary information to make a determination on this prohibitor, the transaction would remain in open status after the third business day.

## DUI Arrest (without a conviction) That May or May Not Include Alcohol in the Arrest Report

For DUI arrests within the past year (without a final disposition), that, per the police report, involve drugs and may or may not involve alcohol, it must be established that the controlled substance referenced in the documentation is a scheduled controlled substance AND is illegally or unlawfully used or possessed.

If any one of the following facts can be established through the police report or other documentation, it will meet 922(g)(3) inference of current

1) The individual admits to using more than ~~the~~ that individual's physician prescribed dosage of a scheduled controlled substance, or (2) in a manner other than the controlled substance was prescribed to him/her by a licensed physician – see "prescription drugs" section below for additional information regarding this standard and contact LAT to review documentation if you can not determine if this standard will apply.

SUBJECT TO PROTECTIVE ORDER

FBI-00000239

The fact that the police arrested the individual for DUI, and alcohol was not involved, is not enough, in itself, to meet the factual patterns that are required for the federal drug prohibitor. The police have different standards for arresting individuals for DUI than what is required for establishing a federal disqualification under Title 18, U.S.C., Section 922(g)(3).

**DUI Charge Not Within the Past Year, Conviction Is Within the Past Year**

If there is a DUI charge that is not within the past year, but the conviction is within the past year prior to the NICS check, this conviction is to be used as a denial only if the record of conviction confirms the conviction is for DUI drugs only, and the drug involved is a scheduled controlled substance. Per the NICS legal counsel, the incident report can be used to determine if drugs (scheduled controlled substances) were involved at the time of arrest. If there is no indication of drugs, it is not necessary to obtain the record of conviction as the prohibitor does not apply. The ATF Chief Counsel has interpreted ATF Regulation Title 27, C.F.R., Section 478.11, for "a conviction for use or possession of a controlled substance within the past year" as a conviction within the past year, although the use or possession (or DOA) may not be within the past year. The interpretation will remain the same unless the ATF Regulation changes.

**Note:** "Within the past year" is defined as being 365 days from the conviction date. Example: conviction date of 10/5/2005 is prohibiting through 10/4/2006. If the attempted purchase date is 10/5/2006, it does not meet under prohibitor 922(g)(3).

**One Drug Arrest with No Disposition**

Due to numerous inquiries on how far back a drug charge with no disposition must be researched, the NICS Management has determined that research must be conducted on drug charges with no dispositions (no other arrests within the past three years) occurring within the past three years only to determine if the conviction occurred within the past year or if you have a drug conviction that is under current active probation only.

**Drug Charge Not Within the Past Year, Conviction Is Within the Past Year**

If there is a drug charge that is not within the past year, but the drug conviction is within the past year prior to the NICS check, it is to be used as a denial. ATF Chief Counsel has interpreted ATF Regulation Title 27, C.F.R., Section 478.11, for "a conviction for use or possession of a controlled substance within the past year" as a conviction within the past year, although the use or possession (or DOA) may not be within the past year. The interpretation will remain the same unless the ATF Regulation changes.

For appealed transactions, if the conviction is within the past year (from the time of the NICS check), the deny decision is sustained (valid deny at the time).

This will make our decisions standard for the initial deny and the appeal.

SUBJECT TO PROTECTIVE ORDER

FBI-00000240

**Note:** "Within the past year" is defined as being 365 days from the conviction date. Example: conviction date of 10/5/2005 is prohibiting through 10/4/2006. If the attempted purchase date is 10/5/2006, it does not meet under prohibitor 922(g)(3).

## Probations Which Include Drug Tests

Conditions of probation must be researched for a drug test within the past year, SOP 5.4.5. When researching an individual currently on active probation to determine if there are any conditions prohibiting him/her from possessing a firearm, you must also verify there are no conditions regarding drug use and, if there are, ask if he/she has tested positive for drugs within the past year. If a verbal response is received that a probationer failed a drug test/screening, confirmation of this positive result MUST be obtained in writing (a copy of the test results or official documentation signed by an agency official). This applies when calling/faxing on all known active probations regardless of the charge.

If it is a drug charge and you are unable to obtain the necessary information or the agency refuses to provide you with the information and no other prohibition has been established, this transaction must remain in open status after the third business day.

If it is a non-drug charge and the information cannot be obtained, federal prohibitor 922(g)(3) no longer applies.

## Prescription Drugs

To qualify under federal prohibitor 922(g)(3), it must be determined that the prescription drug is a controlled substance as defined below by federal statute. The state definition of a controlled substance may not be the same as the federal definition under Title 21. Contact with the LAT or outside agencies may be required to verify the type of drug involved to determine if it meets this definition which is required to establish 922(g)(3).

Prescription drugs, as defined by Title 21, U.S.C., Section 802, which are scheduled controlled substances, may qualify under federal prohibitor 922(g)(3) if used in a non-prescribed manner.

Per guidance from ATF legal counsel, it must be established that the individual's licensed physician issued the prescription and that the individual's prescription advises against the individual taking the substance in a particular manner (amount, taking with alcohol, taking while driving, etc.) **It is not enough to establish a general warning or guidance for the substance** (whether or not that guidance is listed on the pill bottle). **You must establish that a licensed physician prescribed the controlled substance with specific guidance and that the individual/subject took the controlled substance in a manner that is against the licensed physician's specific guidance.**

Prescription drugs may also qualify for federal prohibitor 922(g)(3) if a person has them in his/her possession by unlawful means, such as forging a prescription, stealing a prescription

SUBJECT TO PROTECTIVE ORDER

FBI-00000241

medication, taking a drug that was not prescribed for the individual but for someone else, or obtaining a prescription drug by fraud, and the drugs are a scheduled controlled substance.

## Synthetic Drugs

Per emergency orders of the DEA, dated March 1, 2011 and October 21, 2011, certain synthetic drugs, as amended in section 201 of the Controlled Substances Act (CSA), and their salts, isomers, and salts or isomers have been placed into Schedule I of the CSA and may qualify under federal prohibitor 922(g)(3). The LAT has access to information to determine if the particular synthetic drug involved is a Scheduled I controlled substance. Most common product names to indicate potential Schedule I controlled substance involved are, but not limited to "K2," "Spice," and "Bath Salts."

## Substances Not Included Under the Controlled Substance Act

Per the ATF, alcohol, glue, and, paint huffing/sniffing are not prohibited under the Controlled Substance Act.

## Materials to Make a Controlled Substance

An arrest involving only the possession of materials to make a controlled substance does not qualify under the prohibitor. There has to exist a controlled substance or the subject must have admitted to actually making a controlled substance (e.g., methamphetamine) rather than attempting to make, i.e., possessing the materials but not completing manufacture, hence, no possession. This does not eliminate the possibility of a state prohibitor for these types of offenses.

## Attempts and Conspiracies

"Attempt" or "Conspiracy" to possess a drug/controlled substance does not qualify under federal prohibitor 922(g)(3).

## Drug Card/Medical Marijuana

**Note: The federal government finds that <u>Marijuana/THC has no accepted medical use</u>. Any state issued prescription for Marijuana/THC is invalid under federal law. If use or possession of Marijuana/THC within the past year can be established, the prohibitor applies even if the subject has a valid state prescription. This also applies in states in which Marijuana/THC is legal under the laws of the state or any other purpose.**

If information is obtained that shows the subject is in possession of a state issued drug card, this is enough to establish an inference of current use for federal prohibitor 922(g)(3). The information may be obtained by an admission by the individual that they have the drug card or by presenting a copy of the drug card within the past year.

SUBJECT TO PROTECTIVE ORDER

FBI-00000242

The following scenarios will be utilized to determine if the inference of current use within the past year applies:

(1)   One year from the date of the card's expiration date; or

(2)   One year from the date of "admission" of possession of the card, if no expiration date is available; or

(3)   One year from the date the card is relinquished.

SUBJECT TO PROTECTIVE ORDER

FBI-00000243

# SOP 5.5.3

| SOP Number: 5.5.3 | Page 1 of 1 | Date last revised: 04/29/11 |
|---|---|---|
| **Title: MISSING DISPOSITION** | | |

While all information within the systems should be updated and current, there will be situations where an arrest record will have a missing or delayed disposition. A disposition in criminal procedure is defined as **the sentencing or other final statement of a criminal case.**

If the disposition of a criminal charge is missing or delayed, the Examiner must obtain information to determine if the receipt of a firearm would violate state or federal law. Therefore, one of the following must be obtained:

Final Disposition/Level
Indictment
Information

If the Examiner receives disposition information which indicates the purchaser is currently under indictment or information for a felony offense or a disqualifying misdemeanor, the Examiner must obtain the date in which the subject was placed under indictment or information and document the date in the comments.  SOP 5.15

When reviewing dispositions, a **felony conviction** with a possible confinement of more than one year is disqualifying. A **misdemeanor conviction** with a possible confinement of two years or less is not disqualifying, unless it is a state prohibitor, qualifies under Federal Prohibitor 922(g)(3), or Federal Prohibitor 922(g)(9). For clarification of the above two statements, refer to the Federal Prohibitors. The Examiner may need to research the state laws in which the arrest occurred to determine if the offense is a state prohibitor. **State prohibitors are disqualifying for the subject's state of purchase/transfer or state of residence.**

If an Examiner finds a possible prohibitor and the case has not gone to court to date **and** will not go to court within the three business day time frame **and** there has been no Bill of Indictment/Information filed, this arrest would not be federally disqualifying. This is for any offense felony or misdemeanor. Examiners must also research all terms of release for possible firearms restrictions. If researching for Federal Prohibitor 922(g)(9), the Examiner must research to determine if a protection order or a release agreement is in place. SOP 5.4.9

**Exception: Drug arrest within the past year since no conviction is needed to show inference of use.**  SOP 5.4.7

SUBJECT TO PROTECTIVE ORDER

# SOP 5.5.4

| SOP Number: 5.5.4 | Page 1 of 12 | Date last revised: 04/24/2015 |
|---|---|---|
| **Title: IN-HOUSE RESEARCH** | | |

Multiple NTNs with Different Final Statuses
NTN Referencing
Search by Name and FBI #
NGI
NCIC
Multiple NTNs with Different Final Statuses

WEB SITE
LRAT
Federal Offenses
Requests LRAT CANNOT Process
Discrepancies/Possible Discrepancies

All internal automated systems (NTN Inquiry [by name, FBI, social security number], NGI, NCIC, DDF, ATFRDD, and Web sites) must be checked. The NICS Library (e.g., state information pages, terminology pages) and Westlaw, when applicable, must be researched by the Examiner. The LAT may then be-contacted **prior** to calling or faxing any external agency to determine the level/disposition of the arrest charge.

## A.   NTN INQUIRY

The NTN Inquiry button is found on the status tab of the NTN. The NTN Inquiry button will allow the Examiner to determine if additional NTNs exist for analysis. If an NTN is located, the Record tab is displayed with the corresponding NTN located in the related NTN's window.

The Examiner must select and click the button prior to applying a final status to the NTN. The Examiner is only prompted to select and click the NTN inquiry button after selecting the Deny and the Denying Record buttons; however, the Examiner must select the button prior to selecting the FFL Notified button on all final statuses.

It is considered applying a final status when a transaction is placed into RFC. Examiners performing call backs on **RFC** transactions are not required to perform an NTN Inquiry.

The NTN Inquiry is searched using name, social security number, and record number. An NTN Inquiry must be performed by the Examiner on transactions requiring further research.

If a current transaction exists (delay/open that is actively being processed), notify your Supervisor/Team Leader and have the transaction placed into the correct Examiner's ownership. Also, e-mail the Examiner who has ownership of the prior transaction and their Supervisor and advise of the new transaction.

**Note:** Transactions that have exceeded the 30-day time frame (previously known as default Proceed) are not considered a current transaction.

Every NTN must be handled on its own merit. This means if an NTN has been processed for an individual in the past and comments are being cut and pasted, it is the **absolute** responsibility of the Examiner handling the most current NTN to ensure all procedures are followed. If the

1

## SUBJECT TO PROTECTIVE ORDER

FBI-00000268

previous Examiner neglected to follow an SOP, this does not negate any responsibility to adhere to **ALL** NICS SOPs on subsequent NTNs. This includes forwarding any documentation to DDF scanning and/or the Biometric Services Section's (BSS) NICS Support Unit, sending NICS Index submissions, sending Nlets messages, etc.

## Multiple NTNs with Different Final Statuses

It is the responsibility of each NOU Examiner to review all multiple NTNs with different final statuses.

A. Conflicting Multiple NTNs with an Immediate Proceed

If an Examiner identifies an immediate proceed for an individual while conducting an NTN Inquiry for a transaction that requires further research or is denied, the Examiner must:

- Contact the FFL;
- Verify FFL number and codeword;
- Verify both NTNs are for the same firearm;
- If NTNs are for the same firearm, the Examiner must inform the FFL about not submitting duplicate NTNs. Refer to Scripts;
- If the FFL advises the transactions are for the same firearm, the Examiner must provide the FFL with the appropriate status (Delay status with MDI or Deny status);
- The NTN with the most accurate descriptive information must be the one denied or researched. Ensure the FFL has the correct NTN on the ATF Form 4473;
- The NTN with the invalid information (discrepancy) must be canceled;
- Determine if the firearm was transferred. If the transaction is a deny, the Examiner must ask if the firearm was transferred and select the appropriate firearm retrieval code in accordance with SOP 5.12;
- The Examiner must provide comments in the canceled transaction explaining the reason for the cancellation.

An FFL Discrepancy must be completed. Refer to SOP 5.20 FFL Discrepancy. The Examiner must, also, convert the case histories from the delayed or denied transaction and the canceled transaction into a '.tif' file and e-mail the case histories to   **(H)**   (ATF representative) with a brief message about what the discrepancy is (Example: DOB is conflicting between NTNs).

If the transaction is a denial, please refer to SOP 5.10 Applying Final Status—RFC for denial information.

2

SUBJECT TO PROTECTIVE ORDER

**FBI-00000269**

B. Multiple NTNs with Different Final Statuses (Denied)

If an Examiner performs a search of the NICS utilizing the NTN Inquiry feature and identifies multiple NTNs with different final statuses for the same individual, the Examiner must include an alert/comment in the research comments of the **denied** transaction(s). See SOP 5.15.

**Note:** The key to the review is **the date the person became prohibited.** If the date the person became prohibited was **before** the Proceeded date of any transaction(s), then a status change and all related procedures (i.e., firearm retrieval referral) must be completed as soon as possible on the the day the Examiner discovers there are multiple NTNs with different statuses. For processing responses, see SOP 5.6.

C. Multiple NTNs with Previous Expired

If an Examiner performs a search of the NICS utilizing the NTN Inquiry feature and identifies **prior Expired** NTNs for the same individual, it will be the responsibility of the Examiner working the current NTN to thoroughly review the Expired NTNs at the time the current NTN is given a final status. The Examiner will determine if the Expired NTNs can be given a final status and apply the final status. The Examiner must take all necessary steps to ensure the final decision for the Expired NTNs adhere to all current SOPs. Refer to Processing Responses SOP 5.6

D. Multiple NTNs with Previous NTN Under Appeal

If an Examiner performs a search of the NICS and identifies any NTN(s) for the same individual that is currently **under appeal** ("A" Status) and the current transaction is being delayed, the Examiner must immediately contact the AST Area Manager via CJIS-UNET e-mail stating the appellant has initiated another background check which is currently in delayed status. The e-mail must include both NTN numbers, and the NOU Examiner must advise which NTN is under appeal. The AST will place a return call to the Examiner and advise what information, if any, may have been received pursuant to the appeal process to aid the Examiner in making his/her decision on resolving the delayed transaction. Any applicable case documentation received by the NOU Examiner must be forwarded to the AST Examiner. **The NOU Examiner must continue to actively work his/her case while waiting on information from the AST. If able to make a final decision on the delayed transaction, the Examiner must apply the final status and notify the AST. The NOU Examiner must not apply a final status to the multiple transactions which was previously placed under appeal.**

**NTN Referencing**

When an NTN Inquiry shows a previous NTN which is open, the Examiner must review the comments. If additional research is needed, the Examiner must follow up with any necessary action (i.e., faxes, telephone calls). If the previous NTN was a Delay, a Deny or a Proceed, the Examiner can utilize the information from the previous NTN, but cannot reference the NTN in their comments. If the NTN is a Proceed, this brings up a retention issue. A retention issue may arise should a denied transaction be overturned by appeal or other reasons.

3

## SUBJECT TO PROTECTIVE ORDER

FBI-00000270

**B.    Disposition Document File (DDF)**

**When a hit exists, the Disposition Document File (DDF) tab must be checked on TP and Delay Queue because the search is automatically generated upon the record request.**

When a match is determined on a hit in the DDF, all information **must** be checked for potential disqualifiers even if the record responding to the NICS does not indicate any potential disqualifiers. All potential disqualifiers **must** be researched in accordance to established procedures.

The DDF was established to capture disposition information that could not be updated on the NGI from the NICS Section and the BSS. The DDF not only contains disposition information that cannot be updated on the NGI, but it also contains, but is not limited to, incident reports, police reports, and protection orders.

When a subject search is performed, the DDF is automatically searched. If a manual search is applicable, the search must be performed by FBI number, social security number, and subject name as provided on the criminal record. Some examples include: name change for females due to change in marital status or incorrect spelling of name in comparison to the background check screen (example: FBI record indicates James; background check done on Jimmy).

**Searching DDF Subject Maintenance**

When a record is requested, an automatic search of DDF is conducted. To perform further searches of DDF, go to Admin and select "DDF Maintenance".

Once the screen appears, enter the information you would like to be searched within DDF.

**Search by Name and FBI #**

1. Enter the subject's last name, first name, and/or FBI number (a maximum of 250 records will be returned)
2. Click "Search"
3. If a match is found, it will be displayed within the "Results" field. Double click the appropriate record returned.
4. Click the Documentation tab. Double click on the information returned or highlight and press view. The information will be viewable as a TIF Image.
5. If you would like to attach the documentation located, refer to SOP 5.6.1.

**Note:** If you receive the error message "The file is LZW Compressed," please forward the FBI # or file name to the Supervisor of the DRST. The file cannot be viewed until it is converted into a proper format.

**C.    ATF Relief of Disabilities Database (ATFRDD)**

**When a hit exists, the ATFRDD tab must be checked on TP and Delay Queue because the search is automatically generated upon the record request.**

4

SUBJECT TO PROTECTIVE ORDER

**FBI-00000271**

If hits are returned in the ATFRDD, review all of the ATFRDD hits returned. ATFRDD results are returned based on last name **only**.

1. Compare the records returned to the subject of the background check. All records that are a variation of the subject's name **must** be reviewed to determine if a valid match exists. Example: John, Johnny, Johnnie, Jonathan, Jon, etc.

2. If a valid match is located, the Examiner must request the matching record and type the record information into the research comments section of the transaction.

3. Compare the Relief of Disabilities date of issuance to the criminal history record. Any arrest committed after the date the Relief of Disabilities was granted is not covered by said Relief and must be researched for possible prohibitors, if applicable.

4. Ensure the State of Purchase and State of Residence accepts the ATF Relief of Disabilities. This information is located on each state's Pardon and Restoration of Rights page.

An ATF Relief of Disabilities issued for firearms will also relieve the mental defective federal disability as outlined in Title 27, Code of Federal Regulations (C.F.R.), Chapter 11, Part 478.144 (e). An applicant who has been adjudicated a mental defective or committed to a mental institution will not be granted relief by the ATF unless the applicant was subsequently determined by a court, board, commission, or other lawful authority to have been restored to mental competency, to be no longer suffering from a mental disorder, and to have all rights restored.

## D.    NEXT GENERATION IDENTIFICATION (NGI)

Using the FNU, the Examiner must search NGI for all potentially prohibiting arrests. The Examiner can search one FNU.

To access NGI:

- Open Internet Explorer.
- Click on NICS OE folder, located on the Favorites bar.
- Select EQHR (III Subject Search). (If website's security certificate error message appears, select "Continue to this website (not recommended)).
- Populate the FBI Number/Universal Control Number (UCN) and the E-mail address fields.
- Select "Submit".
- The response must be retrieved from e-mail.

The Examiner must document if the arrest was on file, if additional information was located, and if the SID was posted.

Aud "E" - FBI Record has been expunged.

5

## SUBJECT TO PROTECTIVE ORDER

**FBI-00000272**

Aud "M" - FBI Record has not been automated.

Aud "U" - Unassigned - identity has not been established

In the event a state record responds on III as "COURT DISPOSITION PENDING CONVICTION STATUS UNKNOWN" check NGI for an IFFS Flag. The record does not have a State IFFS Flag but could have an FBI IFFS Flag which would not be detected due to the record being state owned. To determine whether the record on NGI contains an FBI IFFS Flag, follow the examples below:

**Example #1** - Located after descriptive data and just before the arrest data begins.

SID US**12345  DECF N EXPF N ST N NGI N US Y **IFS D** SEAL N

**Example #2** - Located in the Court Data - Disposition area of the record.

Court Data
ICN D 12341132412341234123  UCN 12345A  DOA  2006/01/01  SGT0
DRE 206/01/01  DLU 2006/01/01  DCA        CBL    CIDN        **IFS D**

Any time an NGI record is listed with **IFS D** the individual has an FBI IFFS Flag. Refer to the IFFS procedure for processing. 5.4.3 IFFS FLAG

If NGI returns the following Special Stop error message, refer to SOP 5.5.8: "NGI returned the following status/error message: A0029-Not authorized to perform requested action. Please send to Special Stops to process."

**E.    NCIC**

If a SID is not obtained on NGI and there are potentially prohibiting arrests being researched, the Examiner must submit an IQ using the descriptive data located on the record. The Examiner must submit an FQ* utilizing the SID to obtain the state record. This process must be performed in accordance with state information pages.

*It is no longer necessary to initiate an independent FQ on the SID number from the following states which have returned a record to the NICS as part of the III response:

| | | | | |
|---|---|---|---|---|
| Alabama | Hawaii | Minnesota | North Carolina | Tennessee |
| Alaska | Idaho | Mississippi | North Dakota | Texas |
| Arizona | Illinois | Missouri | Ohio | Utah |
| Arkansas | Iowa | Montana | Oklahoma | Virginia |
| California | Kansas | Nebraska | Oregon | Washington |

6

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000273**

| Colorado | Kentucky | Nevada | Pennsylvania | West Virginia |
| Delaware | Louisiana | New Jersey | Rhode Island | Wisconsin |
| Florida | Maryland | New Mexico | South Carolina | Wyoming |
| Georgia | Michigan | New York | South Dakota | |

Indiana—SID Numbers IN700000 and above

## F.    WEB SITE

Refer to state contact pages for approved state-wide Web sites and contact lists for county Web sites. The Web Site Contact Matrix is also located on SharePoint which contains all available Internet Web sites with navigation instructions.

If an Examiner obtains knowledge of an additional Web site not located on the Web Site Contact Matrix, the Examiner must forward the Web site to a Region Coordinator for review.

## G.    E-MAIL

For e-mails to indicate or address multiple NICS transactions, or to request a Web site be checked, all NICS users must refrain from documenting the NTN and status or the NTN and gun buyer name information in the e-mail on Microsoft Outlook accounts.

E-mail Requests follow the same procedure as Faxed Requests for all DOAs. The following link directly connects to the NICS E-mail Request form on the Ops Map.

## H.    WESTLAW AND LEGAL ANALYSIS TEAM (LAT)

**Please refer to NICS Internal LAT Email Requests on OPs Map.

All Examiners evaluate charge information by relying on their own personal knowledge and experience relating to common offenses within their area of expertise. The year of the offense must be considered as statutes may change from year to year. The Examiner must document in the research comments how that knowledge and experience was obtained. See SOP 5.15.

Examiners must consult their **Supervisor and/or Region Coordinator** if unsure how to interpret the information contained in the Criminal History Record for processing direction and clarification (related to SOPs). The LAT must be contacted for clarification on the State Information Pages, Pardon and Restoration Rights pages, etc.

Examiners must access Westlaw for level of offenses or maximum sentence terms for specific DOAs (i.e., charge with specific statute, theft or larceny with a listed amount). Examiners will not research Westlaw for DV, Alcohol/Drugs, State Prohibitors, Comparables, Federal Charges, or Case Law. Examiners will determine which charges to search based on the state and the year of the offense. Utilize the Westlaw Historic Statute Search Guidelines.

7

## SUBJECT TO PROTECTIVE ORDER

FBI-00000274

Examiners must search by arrest/charge date, not the disposition date. Examiners must utilize the convicted charge if available. Examiners must document findings within the transaction's research comments. See SOP 5.15 for required comments.

For required logon information and to obtain specific steps for searching Westlaw, the Examiners must utilize the Westlaw Training PowerPoint located on the LAT site within SharePoint.

If the Examiner's search of Westlaw results in no information being found, or if the findings result in contradicting information found within the Westlaw search, the Examiners can contact LAT for further assistance.

The LAT must be contacted for Legal Questions (i.e., MCDV, Alcohol/Drugs, State Prohibitors, Comparables, Federal Charges, or Case Law) as outlined below. All Examiners will only contact the LAT if a determination cannot be made by first utilizing Westlaw for level and maximum sentence, referencing materials, and other resources mentioned previously.

All requests for the LAT will be sent via e-mail to the following address from the Global Address List, LAT Delay Queue Requests. The NTN must be listed in the subject line of the e-mail. The reason for request will be entered into the transaction comments. For any special requests or clarifications that cannot/must not be entered into the comments, those details can be entered into the body of the e-mail. Examiners will attach all documents to the NTN and ensure that all comments are up to date prior to sending the request to LAT. No other information is needed in the e-mail except for the Examiner's and Supervisor's contact information so the LAT can contact the Examiner if they have a question regarding their request. To accomplish this, each Examiner must set up a "signature" containing the Examiner's name and extension and their Supervisor's name and extension through the Outlook e-mail. The LAT will notify the Examiner by replying to the original e-mail when the request has been processed and the comments up-dated to the transaction. The LAT will not be putting comments in the e-mail, only in the transaction.

## Reasons for Contacting LAT

### Possible Misdemeanor Crimes of Domestic Violence (MCDV)

Contact the LAT to determine if an offense, by statute, meets the federal criteria of "use or attempted use of physical force or threatened use of a deadly weapon" if offense is not listed on the DV Examiner Chart located on SharePoint. The LAT will assist in determining if the statute **COULD** meet the criteria. Once it is determined the statute **COULD** meet the criteria, it is then necessary to obtain the records of conviction to determine if the particular case in question **DOES** meet the criteria. Refer to the MCDV procedures, SOP 5.4.9.

The following will assist the NICS Section in the processing of transactions that contain a potential firearm disqualifier for a MCDV for the element of the use or attempted use of physical force or threatened use of a deadly weapon. When requesting additional information from the LAT in regards to a domestic violence-related transaction, you will receive one of three

8

SUBJECT TO PROTECTIVE ORDER

FBI-00000275

responses. A response of "Possible," "All Meets," or "Does Not Meet" will be provided. The following are an explanation of the responses:

**Possible:** A response of Possible indicates the statute that was listed **does not** contain a subsection or the subsection that was listed has multiple criteria contained within it. Additional research must be performed to obtain the subsection or the element of the subsection in which the subject was actually **convicted**.

Example:

Question: The subject was convicted under MT ST 45-8-101. Does this meet the force element for domestic violence?

LAT Response: The charge of MT ST 45-8-101 is the general statute for disorderly conduct. It is necessary to obtain the specific subsection that the individual was convicted under in order to determine if the force element exists. The charge is "possible" domestic violence related.

Outcome: If a Possible response is received, additional research is required to try and obtain the specific subsection in which the individual was convicted.

**All Meets:** A response of "All Meets" indicates that the statute or subsection listed meets all of the criteria for use or attempted use of physical force or threatened use of a deadly weapon.
Example:

Question: The subject was convicted under AZ ST 13-120(a) (1). Does this meet the force element for domestic violence?

LAT Response: The charge of AZ ST 13-1203 (a) (1) all meets the force element for the domestic violence criteria. If a conviction and qualifying relationship exist, then the domestic violence criteria has been established.

Outcome: If an "All Meets" response is received, it is necessary to obtain a conviction and qualifying relationship to apply the domestic violence prohibitor for this date of arrest.

**Does Not Meet:** A response of "Does Not Meet" indicates that the statute or subsection listed does not meet the use or attempted use of physical force or threatened use of a deadly weapon criteria.

Example:

Question: The subject was convicted under GA ST 16-11-39.1. Does this meet the force element for domestic violence?

LAT Response: The charge of GA ST 16-11-39.1 does not meet the domestic violence criteria.

9

SUBJECT TO PROTECTIVE ORDER

FBI-00000276

Outcome:  No additional research is required for the domestic violence prohibitor for this date of arrest.

The previous examples are guidelines that will be utilized in the processing of transactions that contain potential domestic violence related offenses.  If there are any additional questions, the LAT must be contacted via email.

**Inquiries Concerning Federal Offenses**

Contact the LAT for the level (felony or misdemeanor) of a federal arrest **with** a disposition for any given year.

**West Dockets**—Contact the LAT before going to outside agencies to check West Docket on federal arrests **with or without** a disposition from **1990 to present**.  West Docket is a database containing federal docket information and may indicate a **disposition** and a **level of offense** for federal arrests (refer to Federal Contact Information tab on the Federal Contact list).   West Docket does not have military information.

- **Inquiries in Determining Status of an Offense (Felony or Misdemeanor)**

Any federal offense which **could have** received **more** than one year is a felony.  A federal offense which could have received one year or less is a misdemeanor.  This is referenced in 18 U.S.C. 1 in the Federal Code Book.  Maximum probation for a federal misdemeanor or felony is five years; therefore, maximum sentence cannot be determined by probation in determining the status of an offense as a misdemeanor or felony.  It is necessary to refer to convicting statute on the date in which the offense **occurred** because the offense may have changed from a misdemeanor to a felony or a felony to a misdemeanor.

For state offenses, the typical maximum punishment for misdemeanors is one year; however, specific states punish misdemeanors for a period of imprisonment exceeding two years. Therefore, for **states that have misdemeanors punishable by imprisonment for a term exceeding two years,** it is necessary to look at the maximum punishment the offense could have received to determine if the offense is a misdemeanor or felony.

- **Request for the NICS Attorney-Advisor**

Any request for the NICS Attorney-Advisor **must** be submitted to the following e-mail address: NICS_Legal_Attorney-Requests.  The e-mail must include the following:

- Your name and extension
- A detailed explanation of your request
- Who requested the opinion/review
- The impact to the NICS Section
- Any attached documentation necessary to perform the review
- A deadline for your response

10

## SUBJECT TO PROTECTIVE ORDER

FBI-00000277

- **Assistance the LAT May Be Able to Provide**

A member of the LAT will attempt to assist with dispositions and terminology requests when possible. If necessary, they can update the state terminology page in question.

## Requests the LAT CANNOT Process

- **Do not** contact the LAT for the level of theft, receiving stolen property, larceny, or embezzlement charges, unless the value involved in the offense, statute and subsection, or the degree is stated.

- **Do not** contact the LAT for level on an offense/conviction that lists a violation of a specific law or act (Violation Lacy Act, Violation Uniform Controlled Substance Act, Violation Liquor Law), unless you have the specific violation that occurred. The LAT needs to know exactly how the law/act was violated in order to determine a conviction level.

- **Do not** contact the LAT for acronym translations of charges and dispositions. The only tool the team has access to for these translations is the blue "Reference Guide to Aid in Understanding Arrest Abbreviations" book that is available in the reference library. The contributing agency must be contacted for this information.

- **Do not** contact the LAT with procedural questions. These questions are to be directed to your supervisory personnel.

- **Do not** contact the LAT asking them to provide a final status (Proceed, Deny, or Delay). These questions are to be directed to supervisory personnel.

- **Do not** contact the LAT if the level of conviction can be determined by the length of the conviction sentence given (e.g., four years state prison).

If a request has been submitted to the LAT and the response has not been received due to the LAT being unavailable, the Examiner must contact all appropriate agencies and follow the Handoff Procedure, if applicable, to have the LAT response checked for further processing. See SOP 5.9.

If you have contacted or are waiting for a response from the LAT, make sure transaction comments reflect this information.

## LAT Requires Clarification or a Revision to a Submitted Inquiry

The Legal Administrative Specialist (LAS) processing the request will e-mail the Examiner, and carbon copy (cc) the Supervisory Legal Instruments Examiner and the Supervisory LAS, for requests in which the Examiner's comments require clarification or revision before the LAT can complete the legal research and provide a response.

11

## SUBJECT TO PROTECTIVE ORDER

The Examiner or Supervisor in the Examiner's absence must update the transaction comments to provide the clarifying information in a timely manner. The Examiner must "Reply All" to the LAS to advise the transaction has been updated with the requested information. Refer to SOP 11.1.2 Legal Analysis (LAT) Responsibilities.

**Discrepancies/Possible Discrepancies**

Conflicting information pertaining to statutes must be forwarded to the LAT for research, clarification, and validation. Once the conflicting information is validated and resolved, the LAT member will take the appropriate steps to have the information updated.

Whenever an Examiner receives a response from the LAT which they suspect may be inaccurate, inconsistent, or in contradiction with information previously provided by the LAT, the Examiner may forward a request for a review of the information to their Supervisor. The Examiner's Supervisor will review the request and, if in agreement, will forward the request via e-mail to the LAT Supervisor for resolution.

The LAT Supervisor will review the request and affect a timely resolution. After a resolution has been determined, the LAT Supervisor will notify the Examiner's Supervisor of the results of the requested review via return e-mail. The Supervisor will notify the submitting Examiner of the resolution.

12

## SUBJECT TO PROTECTIVE ORDER

54

FBI-00000279

# SOP 5.5.5

| SOP Number: 5.5.5 | Page 1 of 17 | Date Last Revised: 03/11/2015 |
| --- | --- | --- |
| Title: EXTERNAL RESEARCH | | |

Outgoing Faxes and Mail
Payment of Court Transcript Fees
Mass Contacts
Waiting for Disposition Information
Entering Information Requests into WFD
Multiple Related Federal DOAs with Missing Disposition
Entering Information Received
Research Comments
Process 2nd Request

All internal research must be conducted and documented **before** making any external contacts.

### State/Federal/International Processing Pages/Contact Lists

The Examiner will contact the state POC, the courts, district attorneys, probation offices, arresting agencies, etc. for disposition, level of offense, incident report, etc. via fax, phone, mail, email, and/or Nlets in accordance with the preference indicated on the State Processing Page and Contact List. If the preference indicates that other agencies can only be contacted if no response is received, or as a last resort, other agencies must be contacted, as soon as possible after the 10th calendar day. This will ensure that all resources, in keeping with the NICS Standard Operating Procedures and established state contact procedures, are being exhausted. Every effort must be made to obtain the necessary information, in order to reach a final decision on a NICS transaction during the research phase.

The NICS Section maintains an accurate listing of the agencies that request a fee from NICS or will not assist the NICS. The State Contact Lists are updated to reflect these agencies. The NICS has an obligation to make every reasonable effort to obtain information; however, Examiners **must** **not** contact an agency if: a) its listing states it charges a fee, since the NICS has no funding for this purpose; or b) its listing states **DO NOT CONTACT**.

For international arrests (Canada or Interpol) please refer to the **International Folder** (located on Share Point). For federal arrests, refer to the **Federal Folder** located on SharePoint. **DO NOT** contact a local or state law enforcement agency for a federal or international disposition.

When researching a possible prohibitor with an ORI similar to the following: "FBI/DATA INTEGRITY CLARKSBURG    (H)    )" this is not a federal arrest. The US District Courts must not be contacted. This is a state arrest and must be researched accordingly. The first two letters in the ORI refer to the state of the

SUBJECT TO PROTECTIVE ORDER

FBI-00000282

originating charge. Contact the POC listed on the appropriate state processing page. On R-84, list ORI as Unknown.

When submitting the request, provide the information listed below and any other pertinent information that may be helpful to the agency contacted:

- FNU or State Identification Number (SID)
- Name of Subject
- Date of Birth
- Charge(s) in question
- Arresting agency and arrest number, if available
- Date of arrest

**Note:** If the disposition is not available, inquire if an indictment, a bill of information or a formal accusation exists.

If an external agency requests to be contacted via email, the Examiner must submit the request via the team 324 email. The Examiner must include the information listed above by either attaching a completed R84 or documenting the information in the body of the email.

On a daily basis, Examiners correspond via telephonic means with law enforcement agencies inquiring about a criminal history or relaying pertinent information regarding possible firearm retrievals. On occasion, an officer may ask for your name to apply to a report. In the past, an Examiner's full name has been given when requested. You are being instructed to relay your **first name and your BRADY ID (4-digit code) only.** If a full name is still requested, the Examiner's first name and Supervisor's last name will be given. All outgoing correspondence (faxes, mail, Nlets messages, and email) must contain the Examiner's first name of their **official bureau name** and first initial of last name, their Brady ID, and the last name of their supervisor. The correspondence **must** not contain any punctuation or any "nicknames" utilized by the Examiner (example: If your official bureau name is Charles, you must utilize Charles, not Chuck).

### Outgoing Faxes and Mail

The Examiner must follow the steps below to edit user settings so all outgoing mail and faxes will populate the information accordingly.

1. Select "Forms" on the NICS Toolbar (a window will appear titled "NICS Operations Online Forms")

2. On the NICS Operations Online Forms window, select "Edit" (a window will appear titled "Examiner User Settings")

3. In the Examiner User Settings window, the following information must be populated:

**SUBJECT TO PROTECTIVE ORDER**

FBI-00000283

a. Examiner – First name of official bureau name and first initial of last name (example: Jason H). Do not use punctuation.
b. Supervisor (example: Hornberger)
c. Extension
d. Email – *team 324 address*
e. Unit ID
f. Brady ID
g. Shift (the remaining information will populate based on the shift chosen)

## Email Requests

The Examiner must provide the following information on email requests:

From: First name of official bureau name, first initial of last name, and supervisor's last name (example: Jason H Hornberger)
Email: *team 324 address*

## Nlets Messages

The Examiner must provide the following information on Nlets Messages:

First name of official bureau name, first initial of last name, and supervisor's last name (example: Jason H Hornberger), phone number including extension and NICS fax number.

## Payment of Court Transcript Fees

If procedure dictates, the Examiner must request a court transcript. Since courts sometimes require payment for court transcripts, the NICS Section, in cooperation with the CJIS Division's Contract Administration Office, has developed a process to pay the invoices received from the courts for these transcripts. If the court requires payment, the Examiner must request an invoice be sent with the transcript. No payment will be made in advance before the transcripts are received. Advance payments in general are prohibited by Title 31, United States Code, Section 3324. This statute prohibits the government from paying for goods before they have been received or for services before they have been rendered. The Examiner must, then send the invoice to the attention of the NICS Section Budget Representative, Module A-3. The invoice must include:

➢ Company letterhead (Court or Court Reporter's business address)
➢ Case File Number or invoice number
➢ Date
➢ Payment Amount
➢ Payee Name or Remit to Name
➢ The number of pages transcribed

SUBJECT TO PROTECTIVE ORDER

FBI-00000284

If the court will not send the transcript without payment in advance, comments must indicate that the transaction will be delayed indefinitely.

Region Coordinators will attempt annually to obtain the agency's cooperation. The Uncooperative Database, contact lists, and Global Address Book are updated with any new information. If a bill or refusal letter is received, forward the information to the Region Coordinator Supervisor.

**Note:** If a verbal response is received from an agency, the Examiner is required to request a hard copy. Enter comments stating the hard copy was requested. Once the hard copy is received, enter comments and specify where the hard copy was forwarded (DDF, NSU, etc.)

### Mass Contacts

Region Coordinators are responsible for dispatching all Mass Contacts. Mass Contacts are agencies that require the NICS to request information from them in a very specific manner. Examiners must forward the Mass Contacts to the Region Coordinator Team using the following, unless the State Processing page(s) provides alternate instructions:

1-Open WFD, select "fax" as method of contact, complete form as usual. (All contacts will be available in Court Manager)

2-Click on "Request Information", complete form and click "ok"

3-Click on "no cover sheet" and click OK

4-Go to Outgoing Faxes on your Desktop

5-Single click on the R-84 with the corresponding NTN

6-Click on "email this file" at the top left corner of the screen

7-On the email subject line, the Examiner must enter the name of the mass contact. Ex: MT DOC, NY CHRS, California Manual Record, etc.

**Note**: Delete any data that automatically populates in the subject field before you enter the appropriate Mass Contact Name.

8-Send email to "NICS_Dispositions"

**Note**: Do not replace steps 4, 5, and 6 with forwarding your initial email confirmation to the Dispositions Folder. The link that would be forwarded could be purged, which would make the link inaccessible.

## SUBJECT TO PROTECTIVE ORDER

FBI-00000285

## Receiving Voice Mail/Answering Machine

If an Examiner receives a voice mail or answering machine while attempting to contact a law enforcement agency or entity for information, the Examiner must **only leave a message if the agency is identified** on the voice mail. If a specific agency is identified on the voice mail, the Examiner may leave a detailed message requesting information. The Examiner must not be divulging any of the purchaser's information, the Date of Arrest (DOA) or arrest information if the voice mail is unidentified. Divulging this information on an unidentified voice mail could result in a privacy act violation if the message is left at the incorrect number that is not a law enforcement agency or entity. If a message is left requesting police report or disposition information, enter the request in WFD.

## Waiting for Disposition Information

All NICS employees are required to utilize the Waiting for Disposition Information (WFD) function for every NICS Transaction Number (NTN) that requires contact with an outside entity (including telephone calls).

The WFD allows each Date of Arrest (DOA) to have its own WFD screen and its own Comment screen called the Complete DOA Comments Screen. The WFD enables the Examiner to see the specific agency contacted, the method of contact, and the information requested from that agency in the summary of request section for each DOA.

Once an Examiner determines that a valid hit has occurred and the record requires contact with an external entity, a WFD Request must be completed for each DOA needing researched. The Examiner will go to "Form" on the Background Check screen and select "Waiting for Dispo." When the window appears for WFD, the Examiner will see the following fields located on the Disposition Record:

## Field Descriptions:

Top Row:

- NTN – Automatically populated (Examiner cannot change).

- DOA – The Examiner must manually enter the DOA requiring additional research. The two options available include manually entering the Month, Day, Year or selecting the information from the drop-down menu (exception Year). The Examiner must click the "Add" button to add a DOA to the drop-down list.

- DOA – The drop-down menu will include all DOAs that have been added by the Examiner.

## SUBJECT TO PROTECTIVE ORDER

FBI-00000286

Second Row:

This is a "system populated" area updated when the Examiner enters information in the other fields.

- Status – Will show working (request submitted), cancel (request canceled) and completed (response received from agency).

- Date of Arrest – DOA requiring additional research.

- State ID - State receiving request.

- Record ID – Identifying Record Number of the hit requiring additional research (Interstate Identification Index (III) – FBI Number; NCIC – Protection Order, Warrant Number, etc.).

- Request Date/Time – Date and Time the request was submitted to the outside agency.

- Response Date/Time – Date and Time the response was received from the outside agency.

- Agency – Name of Agency receiving the request.

- Action Code – Request type (police report, disposition, etc.). The Action Code determines the form generated. Multiple Action Codes cannot be selected but the additional information being requested from the agency can be indicated in the Comments field within the WFD.

Third Row:

This is a "self populated" area where the Examiners are required to complete the fields in the row.

- Record Number – The drop-down list will include the Identifying Numbers of all hits returned. Select or manually enter the appropriate Identifying Number requiring research.

- Action Code – Request type submitted (choose appropriate item from drop down menu).

- Method of Contact– Request type submitted (choose appropriate item from drop down menu).

SUBJECT TO PROTECTIVE ORDER

FBI-00000287

Fourth Row:

- Agency Contacted – the "Lookup" tab accesses the Global Address Book.

    o If this option is utilized, the State Contacted, ORI, Attention, and Contact
      Information will be automatically populated.
    o If this option is not utilized, manual entry is required for the above-listed
      fields.

**Note**: If the Examiner selects an agency from the "Lookup" tab and needs to make a
change, select the "Lookup" tab again and make the necessary change or click the
"Clear" tab.

**Note:** If Fax is selected as the method of contact, the Request Information tab will not
activate unless the agency has a fax number in the Global Address Book.
Last Field Row:

Comments – A free text field.  Please refer to SOP 5.15 Documenting Research
Comments.

Buttons on the Right Side of the Screen:

- Request Information

- Received Before 3 Days**

- Received After 3 Days**

- Received After 30 Days

- Cancel Request

- Save Comments

The second tab in the WFD is the "DOA Comments."  This tab organizes all agencies
contacted and all responses received for each DOA requiring additional research.

**Entering Information Requests into WFD**

Faxed Requests for One DOA:

  1. Select the appropriate DOA on the Disposition Record Screen.

    - If the DOA is not listed already, the Examiner manually enters the
      information and selects "Add."

SUBJECT TO PROTECTIVE ORDER

FBI-00000288

2. Choose the Record Number from the drop-down list or manually enter a record number.

3. Select the appropriate Action Code.

4. Select Fax.

5. Select Lookup and add all agencies contacted for the information.

OR

For a single arrest, the Examiner can manually enter the (a) Agency Contacted, (b) State Contacted, (c) ORI, (d) Attention, (e) Contact information if the information is not available in the Global Address Book; however, the Global Address Book must be utilized if the agency is available.

    a. Multiple agencies can be selected; however, the Primary Agency is the only one that will show in the Agency Contacted field.

    b. If multiple agencies are selected using fax as the method of contact and an agency does not have a fax number listed in the Global Address Book, an error message window stating "FAILED to queue for" that agency will appear indicating that a fax was not transmitted.

    c. Only agencies successfully contacted will be updated in the Status screen as well as in the DOA Comments and the Comments Field of the Background Check.

6. Select Request Information.

7. The Populate the Form Fields screen appears. The following information will complete the R-84 that is submitted to the outside entities:

    a. NTN – Required – The only field pre-populated and cannot be changed.

    b. Unit ID – Required.

    c. Brady ID – Required.

    d. Examiner – First name required but may use full name if requested by agency.

    e. Supervisor – Last name required.

    f. FBI Number – Required.

SUBJECT TO PROTECTIVE ORDER

FBI-00000289

    g. Subject Name – Required – This information is pre-populated based on the information provided on the search screen. The Examiner is responsible for ensuring the information matches the subject information on the hit (i.e., Alias information). The Examiner may provide any alias information to the agencies contacted by entering the information into the comments field of the R-84.

    h. Date of Birth – Required – This information is pre-populated based on the information provided on the search screen. The Examiner is responsible for ensuring the information matches the subject information on the hit (i.e., Alias information). The Examiner may provide any alias information to the agencies contacted by entering the information into the comments field of the R-84.

    i. Sex - Required.
    j. SID - Optional.

    k. SOC - Optional.

    l. Contributor of Fingerprints – Required.

    m. OCA – Optional.

    n. Date Arrested or Received – Required.

    o. Offenses Charged at Arrest – Required.

After entering the offenses charged at the time of arrest, the Examiner can right click on the field to obtain list of additional comments or manually enter additional comments/questions regarding that DOA below the charge.

**Note**: The Name and DOB fields on the R-84 can be edited by the Examiner if necessary.

    8. Click OK.

    9. Click Send.

    10. Review Forms Window is displayed.

       • You can select the R-84 and view or edit it as necessary.

    11. Click Send All.

    12. The next screen to appear is "Add a Coversheet?" Click the appropriate response.

SUBJECT TO PROTECTIVE ORDER

FBI-00000290

13. Click OK. Popular Cover Sheet Fields window is displayed.

14. Click OK.

## Faxed Requests for Multiple DOAs to the Same Agency

Faxed requests for multiple DOAs to the same agency may be completed via WFD by entering each DOA:

1. Select the DOA on the Disposition Record screen.

   - If the DOA is not listed, the Examiner must manually enter the information and select "Add."

2. Choose the Record Number from the drop-down list or manually enter a record number.

3. Select the appropriate Action Code.

4. Select Fax.

5. Select Lookup and add the agency contacted for the information or manually enter the Agency Name, the State Contacted, the ORI, Attention field, and Contact Information.

6. Click Request Information.

7. Complete the steps as outlined in Step 7 in the above section of Faxed Requests for One DOA.

8. Select OK.

9. Add the next DOA by entering the date and selecting "Add."

10. Select the appropriate Action Code.

11. Click Request Information.

12. Complete the fields in the "Populate the Form" window and click OK. Repeat Steps 9 thru 12 for each additional DOA.

13. Click send. Review Forms Window is displayed.

   - You can select the R-84 and view or edit it as necessary.

14. Click Send All.

SUBJECT TO PROTECTIVE ORDER

FBI-00000291

15. Select the appropriate Action Code.

16. Click OK.  Populate Cover Sheet Fields is displayed.

17. Click OK.

**Entering WFD for Information Unattainable**

1. Enter only one DOA on the Waiting For Disposition Screen and  click "Add" to populate the DOA field

2. Select the Record Number from the drop-down list or manually enter a record number

3. Select the Action Code, "U" Information Unattainable, N/A will be automatically entered into the Method of Contact box

4. For Agency Contacted, Select Lookup.  Select Add/Change and type into the Address Book "Information Unattainable"

5. Select OK twice to populate information

6. Select Request Information

**Note**: The Examiner will only enter **one** "Information Unattainable" per transaction after it has been determined no external agencies can be contacted.

**Mailed Requests**

Mailed Requests follow the same procedure as Faxed Requests for all DOAs with the following exceptions:
1. Select Mail.
2. Select OK.  The next screen to appear is "Add a Coversheet?"  Select Final Disposition Request.  The Examiner must ensure the information listed is correct.  The Examiner has the capability to modify the information with the exception of the NTN.

If Mail is selected as the method of contact and the R84 and Final Disposition Request do not print, do not re-enter this request into WFD.  The Examiner must go into Outgoing Faxes and print the R84 and Final Disposition Request.  The Examiner also has the option to utilize the NICS Online Forms located on the NICS Toolbar and re-enter the information.

SUBJECT TO PROTECTIVE ORDER

FBI-00000292

## Telephone Requests

Telephone Requests follow the same procedure as Faxed Requests for all DOAs with the following exceptions:

1. Select Telephone.

2. Enter appropriate comments.

## Email Requests

All NICS users must refrain from documenting the NTN and status or the NTN and name information on Microsoft Outlook accounts. For Emails to indicate or address multiple NICS transactions, or to request a website be checked, NICS employees must refrain from documenting the NTN and name of the gun buyer in the Email. To eliminate the occurrence of such, the NICS employee must verbally request the information. If unable to request the information verbally, an Email containing only the NTN must be sent. All other requesting information must be clearly stated in the comments of the NICS transaction (not the body of the Email): (Reference Section nine of SOP 10.1)

- DOA
- Offense
- State in which the offense occurred
- Federal Offense (if applicable)
- Statute number of offense if available
- Any other specific information regarding the DOA in question

Email Requests follow the same procedure as Faxed Requests for all DOAs with the following exceptions: (The following link directly connects to the NICS E-mail Requests form on the Ops Map.)

1. Select Email.

2. Enter appropriate comments.

## Multiple Related Federal DOAs With Missing Dispositions

If a criminal history posted on NGI provides multiple Federal arrests that appear to be associated with one another and not every associated cycle is updated with disposition information, the Examiner is required to forward the FBI number and all associated Federal DOAs to the IHT7.

Example:

1-ARRESTED OR RECEIVED 01/20/1982
  AGENCY- FBI AGENCY (    (H)    )
  AGENCY CASE-82CF2

## SUBJECT TO PROTECTIVE ORDER

FBI-00000293

CHARGE 1- POSSESSION C/S WITH INTENT

COURT- ()
CHARGE- SIMPLE POSSESSION
06/05/82 CONVICTED, 6 MO SUSP, 3 YRS PROB

2-ARRESTED OR RECEIVED 01/20/1982A
  AGENCY- US MARSHALS (      (H)      )
  AGENCY CASE-82CF6

  CHARGE 1- POSSESSION C/S WITH INTENT

3-ARRESTED OR RECEIVED 01/20/1982B
  AGENCY- DEA AGENCY (      (H)      )
  AGENCY CASE-82CF8

  CHARGE 1- POSSESSION C/S WITH INTENT

**Example is not all inclusive.

To forward information, Examiners will enter a WFD request as normal. In the
comments field of the WFD entry, the Examiner will enter the keyword: *BSS. Entry of
the keyword enables a system report to be generated and forwarded to BSS by the
appointed representative.

**Entering Information Received**

When an Examiner receives a response from outside agencies, the information **must** be
entered in either the Research Comments or WFD.

**Exception:** It is not required to enter "No Record" responses if a decision of proceed or
deny can or has been applied to the NTN. However, if a transaction is still in a **delay**
status, all "No Record" responses **must** be entered.

**Research Comments**

If an Examiner is utilizing the Research Comments to enter receipt of information, the
Examiner **must** indicate how the information was received (fax, e-mail, mail, telephone
call), the agency that provided the response, the date of arrest the information applies to,
and the information provided.

**Example:** An Examiner is researching a 02/10/1999 arrest made by Hammond PD,
Indiana for the charge of Battery. The Examiner must utilize WFD to contact Hammond

SUBJECT TO PROTECTIVE ORDER

FBI-00000294

PD for the police report, as well as, Lake County Traffic and Misd Court and Hammond Superior Court for the disposition information.

*If the Examiner receives a fax from Hammond PD with the police report and enters the information in the Research Comments, the comments **must** state:

Fax received from Hammond PD for DOA: 02/10/1999. Review of police report indicates that the victim was a stranger.

*If the Examiner receives an e-mail from Lake County Traffic and Misd Court, the Research Comments **must** state:

E-mail received from Lake County Traffic and Misd Court for DOA: 02/10/1999. Response indicates charges were dismissed. Forwarded e-mail to DRST.

## WFD

To enter information received in WFD:

1. Choose the appropriate DOA.

2. Status Bar - Highlight the agency the information was received from.

3. Enter comments in the WFD Comments field indicating the response received.

4. Click the button that corresponds to the date received, "Received Before 3 Days," "Received After 3 Days," or "Received After 30 Days." Comments will populate into the DOA Comments and the Background Check Screen Comments.

**Note:** 3 Days is considered 3 business days from the date the request was sent.

## Display Form

1. Choose the appropriate DOA.
2. Status Bar - Highlight the agency.
3. Review R-84 Form.

## Process 2nd Request

1. Choose the appropriate DOA.

2. Status Bar - Highlight the agency.

3. Click "Process 2nd Request".

4. "Review Forms" window is displayed.

## SUBJECT TO PROTECTIVE ORDER

FBI-00000295

- You can select the R-84 and view or edit it as necessary.

5. Click "Send All".

6. The next screen to appear is "Add a Coversheet". Select the appropriate response.

7. Click "OK". Populate Cover Sheet Fields window is displayed.

8. Click "OK".

## Cancel Request

1. Choose the appropriate DOA.

2. Status Bar - Highlight the information that needs to be canceled.

3. Enter appropriate comments.

4. Click "Cancel Request." The comments will populate into the DOA Comments and the Background Check screen.

## Save Comments

1. Choose the appropriate DOA.

2. Enter appropriate comments. The comments will populate into the DOA Comments and the Background Check screen.

## Work Around

Specific work-around has been identified and is necessary in order to document the request of information for dates of arrest requiring additional research for each NTN. The scenarios requiring a work-around and the details of each work-around are described below:

- Ability to Add "Unknown" Dates of Arrest (DOA) to WFD

The work-around steps are as follows:

a. Enter the Month, Day, and Year into WFD as follows:  01/01/1900.

b. Click ADD.

c. Complete the remaining fields required to fax, mail, telephone, or Email.

## SUBJECT TO PROTECTIVE ORDER

70

FBI-00000296

d. In the Comments field, enter appropriate comments indicating the DOA is "unknown."

e. Select Request Information.

f. In the Populate the Forms field for the DOA, remove the date of 01/01/1900 and type "unknown."

g. Complete the WFD entry.

The above work-around will be in place until corrected systematically or until it is determined by the NICS Section it is no longer feasible.

### Facsimile Transmission Notification

For NICS transaction documentation purposes, the NICS Research Comments must reflect the appropriate contact information, e.g., the name of the agency faxed and the fax number used in the request. The Biscom Fax Server confirmation message "notification for fax" has been modified to read, "Successful Fax: Fax successfully sent to (agency name) at (agency fax number)."

A NICS Section employee may document the NICS Research Comments by copying and pasting the "Successful Fax" confirmation message into the NICS Research Comments field or by manually locating and entering the information. Only data relevant to the transaction must be placed in the comments or attached to the transaction.

### Unsuccessful Fax Confirmation

If an unsuccessful fax confirmation is returned to the Examiner's inbox, the Examiner will:

Contact the appropriate Region Coordinator or send an Email to "Region Coordinators," and the Region Coordinator Supervisor advising of the issue that occurred.

The Region Coordinator will verify the contact data in Court Manager and check with the external agency to determine if they are experiencing any fax communication issues.

If the agency advises the Region Coordinator no issues exist, the Region Coordinator will advise the Examiner to attempt to resend the fax from WFD within the NICS Toolbar. If an unsuccessful fax confirmation is returned to the Examiner's inbox, the Examiner will then print their coversheet and R84(s) from their outgoing faxes folder located on the NICS Desktop and manually fax the information to the agency, verifying it was successfully or unsuccessfully sent to the appropriate agency.

## SUBJECT TO PROTECTIVE ORDER

FBI-00000297

The Examiner will need to print the unsuccessful fax confirmation from their inbox, attach the R84/coversheets and successful fax confirmation and send this information to the Region Coordinator.

The Region Coordinator will report the Unsuccessful / Successful Facsimile information to CCSST which will work with the appropriate individuals to resolve any issues that may be affecting outgoing facsimiles.

### WFD Inquiry

**Entering information in WFD Inquiry is optional.

The WFD Inquiry feature allows the Examiner to enter comments into purged transactions only indicating which agencies have responded.

Click on the WFD Inquiry tab located on the toolbar.
Click on DOA and agency that responded.
Enter comments and click appropriate tab.

SUBJECT TO PROTECTIVE ORDER

72

FBI-00000298

# SOP 5.10

# DEPARTMENT OF JUSTICE

# FEDERAL BUREAU OF INVESTIGATION



Pinckney v. United States

2:16-cv-2350

SOP 5.10  APPLYING A FINAL STATUS

Redacted Copy

SUBJECT TO PROTECTIVE ORDER

74

**DELETION CODES**

NO REDACTIONS NECESSARY

**SUBJECT TO PROTECTIVE ORDER**

75

**FBI-00000454**

| SOP Number: 5.10 | Page 1 of 7 | Date Last Revised: 02/13/2017 |
|---|---|---|
| Title: APPLYING A FINAL STATUS -- READY FOR CALL BACK (RFC) | | |

**Applying Final Status To NICS Call Center Transactions**
**Call Center Proceed Transactions**
**Call Center Denied Transactions**
**Applying Final Status To NICS E-Check Transactions**
**NICS E-Check Proceed Transactions**
**NICS E-Check Denied Transactions**
**Status Change Transactions**
**Transactions Over 88 Days Old**
**Cancel Transactions**

Comments must be entered on all DENY transactions.  Refer to <u>SOP 5.15</u>.

Refer to the <u>Customer Service Quick Reference Guide</u> for PCA Code Descriptions.

**Applying Final Status To NICS Call Center Transactions**

**A.**    **Call Center Proceed Transactions**

As soon as the final status of a Proceed transaction has been determined and comments have
been entered, the NICS Examiner must place the transaction in RFC.  This includes Expired
transactions that are given a final status of a Proceed.

The NICS Examiner must perform the following steps:

1. Select the Set Transaction Status tab.
2. Select Proceed from the NTN status drop-down box.
3. Perform an NTN Inquiry:
    a. Scroll down to the Additional Actions section.
    b. Click on the Related Transactions tab.
4. Enter comments in the User Entered Comments section per <u>SOP 5.15</u>.
5. Click the +Add button.
6. Select the Ready for Callback check box.
7. Select Submit.

**B.**    **Call Center Denied Transactions**

**Note:**  Potential firearm retrievals will be processed by the Call Center.

The transaction must be immediately placed into RFC with Denied status applied. Transactions
with a Denied status **must** not remain in a NICS Examiner's ownership.  This includes
previously Expired transactions that are given a final status of Denied.  It also includes
transactions past the 3rd business day when the only information needed is to know if the firearm

**SUBJECT TO PROTECTIVE ORDER**

FBI-00000455

was transferred. If the FFL is unable to determine if the firearm was transferred when the Call Center calls, then the transaction will be placed into the Information Received workbasket. When the NICS Examiner pulls the transaction from Get Most Urgent, the NICS Examiner will utilize the Initiate Callback feature and contact the FFL to determine if the firearm was transferred or not.

The NICS Examiner must perform the following steps:

1. Select the Select Transaction Status tab.

2. Select Denied from the NTN status drop-down box.

3. Select the appropriate PCA Code.

   Note: If the denying record does not display on the Set Transaction Status tab for denials based on NCIC or NICS Index, ensure the Query Secondary Databases has been performed after selecting a valid match.

4. Select TRUE or FALSE for the Denying Record drop-down box.

5. After the NTN Status is marked Denied, a new Consider for NICS Index tab will populate. For Denials as a result of a match to a NICS Index hit, the NICS Examiner will not select Consider for NICS Index. However, if there is an indication of a discrepancy between a match in NICS Index and the ICE results, Consider for NICS Index must be selected.

   a. Click on the Consider For NICS Index tab.

   b. Scroll down to the NICS Index Submission section.

   c. Select Consider For NICS Index.

6. Perform an NTN Inquiry:

   a. Scroll down to the Additional Actions section.

   b. Click on the Related Transactions tab.

7. Enter comments in the User Entered Comments section per SOP 5.15.

8. Click the +Add button.

9. Select the Ready For Callback box.

10. Select Submit.


**Alternate Denial:**

If the transaction is Denied for a reason other than a match in the NCIC, the III, or the NICS Index, the NICS Examiner has the capability of utilizing an Alternate Denial. If there is **no** Record ID to select in the Record ID box, the NICS Examiner must select the Alternate Deny:

1. Select the Set Transaction Status tab.
2. Select Denied from the NTN status drop-down box.
3. Select the "+" under the Alternate Denial segment.
4. Select the proper Database from the drop-down box.

2

**SUBJECT TO PROTECTIVE ORDER**

5. Enter the Record ID. (Record ID will be SID or AR/I94 number)
6. Enter the Record Type. (State record or ICE Results)
7. Select the PCA from the drop-down box.
8. Perform an NTN Inquiry:
    a. Scroll down to the Additional Actions section.
    b. Click on the Related Transactions tab.
9. Select Consider for NICS Index on the Consider for NICS Index Tab.
10. Enter comments in the User Entered Comments section per <u>SOP 5.15.</u>
11. Click the +Add button.
12. Select the Ready For Callback box.
13. Select Submit.

After the Denied transaction is placed into Ready For Callback the Call Center will call the FFL to provide the status. If the Firearm retrieval code is Unknown the transaction will be placed into the Information Received queue. When the NICS Examiner pulls the transaction from Get Most Urgent the NICS Examiner will contact the FFL to set the Retrieval Code.

1. Scroll down to Additional Actions segment.
2. Click the FFL Information tab.
3. Click Initiate Call Back. This will populate a RFC tab.
4. Verify the FFL and Code word.
5. Provide the FFL with the Denied status.
6. Scroll down to the Transactions Ready for Retrieval—Other segment.
7. Click on the "Denied" link next to the proper NTN.
8. Click Submit at the Confirm Retrieve Request screen.
9. Click Submit at the Display Transaction Status screen.
10. Use the drop-down box on Firearm Transfer Question to answer if the firearm was transferred.

      **If YES:**
        1. Select Firearm retrieval code.
        2. The NICS Examiner must enter date firearm was transferred.
        3. Enter comments in User Entered Comments.
        4. Click Add button.
        5. Click Submit.
      **If NO/UNKNOWN:**
        1. Click Submit.

11. Answer the Denial Questions if applicable.

## Applying Final Status To NICS E-Check Transactions

**A.**    **NICS E-Check Proceed Transactions**

As soon as the final status of a Proceed transaction has been determined and comments have been entered, the NICS Examiner must place the transaction in Proceed Status.

3

**SUBJECT TO PROTECTIVE ORDER**

FBI-00000457

The NICS Examiner must perform the following steps:

1. Select the Set Transaction Status tab.
2. Select Proceed from the NTN status drop-down box.
3. Workaround: If the FFL has retrieved the MDI, the FFL Notified box will be selected. After selecting Proceed, the NICS Examiner must uncheck the FFL Notified box.
4. Perform an NTN Inquiry:
   a. Scroll down to the Additional Actions section.
   b. Click on the Related Transactions tab.
5. Enter comments in the User Entered Comments section per SOP 5.15.
6. Click the +Add button.
7. Select Submit.

**B.    NICS E-Check Denied Transactions**

Transactions with a Denied status **must** not remain in a NICS Examiner's ownership. This includes Expired transactions that are given a final status of Denied. It also includes transactions past the 3rd business day when the only thing needed is to ask if the firearm was transferred. Potential firearm retrievals will be processed by the Call Center.

1. Select the Select Transaction Status tab.
2. Workaround: If the FFL has retrieved the MDI, the FFL Notified box will be selected. Therefore, to set a Deny status the NICS Examiner must first select the Proceed or Redo Cancel status to activate the FFL Notified button. Once the button has been activated, the NICS Examiner must then uncheck the FFL Notified box.
3. Select Denied from the NTN status drop-down box.
4. Select the appropriate PCA Code.
   **Note:** If the denying record does not display on the Set Transaction Status tab for denials based on NCIC or NICS Index, ensure the Query Secondary Databases has been performed after selecting a valid match
5. Select TRUE or FALSE for the Denying Record drop-down box.
6. After the NTN Status is marked Denied, a new Consider For NICS Index tab will populate. For Denials as a result of a match to a NICS Index hit, the NICS Examiner will not select Consider For NICS Index. However, if there is an indication of a discrepancy between a match in NICS Index and the ICE results, Consider for NICS Index must be selected.
   a. Click on the Consider For NICS Index tab.
   b. Scroll down to the NICS Index Submission section.
   c. Select Consider For NICS Index.
   d. Click Submit.
7. Perform an NTN Inquiry:
   a. Scroll down to the Additional Actions section.
   b. Click on the Related Transactions tab.
8. Enter comments in the User Entered Comments section per SOP 5.15.
9. Click the +Add button.

4

**SUBJECT TO PROTECTIVE ORDER**

FBI-00000458

10. Select Submit.

**Alternate Denial:**

If the transaction is Denied for a reason other than a match in the NCIC, the III, or the NICS Index, the NICS Examiner has the capability of utilizing an Alternate Denial. If there is **no** Record ID to select in the Record ID box, the NICS Examiner must select the Alternate Deny:

1. Select the Set Transaction Status tab.
2. Select Denied from the NTN status drop-down box.
3. Select the "+" under the Alternate Denial segment.
4. Select the proper Database from the drop-down box.
5. Enter the Record ID. (Record ID will be SID or AR/I94 number)
6. Enter the Record Type. (State record or ICE Results)
7. Select the PCA from the drop down box.
8. Perform an NTN Inquiry:
   a. Scroll down to the Additional Actions section.
   b. Click on the Related Transactions tab.
9. Select Consider for NICS Index on the Consider for NICS Index tab.
10. Enter comments in the User Entered Comments section per SOP 5.15.
11. Click the +Add button.
12. Select Submit.

If the FFL does not retrieve the completed response within the system's allotted time frame for a Deny, then the response will automatically be placed in the RFC.

After a NICS E-Check transaction is automatically placed into the RFC, the NICS Examiner performing the RFC function will pull the transaction from the RFC and, at that time, must call the FFL to provide a final status of Deny for the transaction.

**Do not call the FFL with the response unless the transaction is Expired or FFL Appellant Notified was selected by mistake.** When the Submit button is selected, the transaction will automatically be sent out in the system as a completed NICS E-Check response available for the FFL.

**Note:** NICS E-Check transactions must not be placed into RFC unless converted by the system automatically.

**Status Change Transactions**

**A.    Call Center Status Change**

If a status change has occurred on a transaction less than 88 days old that was initiated at the Call Center and a final status can be applied, the transaction must be placed into RFC.

5

**SUBJECT TO PROTECTIVE ORDER**

80

**Note**: The NICS Examiner must apply the appropriate status and complete in accordance with Section A or B.

**B.    NICS E-Check Status Change**

If the transaction was initiated by NICS E-Check, and a status has already been retrieved by the FFL, the NICS Examiner must contact the FFL and provide the appropriate status. NICS E-Check FFLs are unable to obtain the status of a transaction once a status change has been made. Additionally, if a "Proceed" or "Deny" status can be applied after a NICS E-Check transaction has "Expired," the NICS Examiner **must** contact the FFL. If the NICS Examiner is unable to contact the FFL, please refer to UPEG.

**C.    Transactions Over 88 Days Old**

**Note**: Information in this section applies to both NICS E-Check and Call Center transactions.

In some situations (audits or lawsuits), transactions may remain on the NICS past the normal purge retention date. If the transaction is over 88 days old, the FFL **must** be notified of a final status by the NICS Examiner. These transactions **must not** be placed in RFC. If the FFL questions why NICS is applying a final status to a transaction in excess of 88 days old or if NICS is keeping a registry, NICS Examiners are required to utilize the Script addressing why NICS has a record of an NTN past the purge requirement. Refer to Scripts.

The exception to the NICS Examiner applying a final status is a transaction previously placed in "Under Appeal" status. Refer to SOP 5.11 Status Change Section J.

If the NICS Examiner is unable to contact the FFL, the transaction must be e-mailed to the UPEG. The subject line of the e-mail must state "Handoff" The body of the e-mail must contain the NTN and a description of the work to be completed. Refer to SOP 9.1 NICS Command Center Role. The NICS Examiner must document in the comments and apply a status to the transaction.

**D. Cancel Transactions**

**Note**: Information in this section applies to both NICS E-Check and Call Center transactions

If a transaction is "Cancelled," the NICS Examiner must call the FFL. If transaction was re-created due to system error, the FFL must be notified of updated NTN and status. If unable to contact the FFL by the end of the NICS Examiner's shift, the NICS Examiner must place the transaction in Handoff per SOP 5.9.

Canceling a Transaction:

1. From the transaction, click Other Actions.

6

**SUBJECT TO PROTECTIVE ORDER**

FBI-00000460

**Note:** If the status has been set, the NICS Examiner may have to select Reopen in the top right of the transaction in order to access Other Actions. If Reopen does not display, the NICS Examiner must:

       a)  Select Actions.
       b)  Select Maintain Background Check.

2. Select Cancel Transaction.
3. Select the Reason for Cancellation.
4. The Examiner must enter comments in the User Entered Comment box per <u>SOP 5.15</u>.

    <u>Work Around</u>
    The Cancellation Comment box is a required field. However, this comment box does not function properly and will not save the comments to the transaction. The Examiner may enter N/A into the Cancellation Comment box.

5. Click Submit.

**Note:** The transaction must **not** be placed in RFC. The Call Center is unable to provide status information to the FFL. The NICS Examiner must contact the FFL with the final status. If the NICS Examiner is unable to contact the FFL by the end of their shift, the transaction must be handed off. See <u>SOP 5.9</u> Handoffs.

7

**SUBJECT TO PROTECTIVE ORDER**

# SOP 12.0

t

(H), (N)

SUBJECT TO PROTECTIVE ORDER

FBI-00000345

(H), (N)

3

SUBJECT TO PROTECTIVE ORDER

(H), (N)

### 12.3.1 Contact List/Court Manager Updating

The state and federal contact lists are to be updated by the RCs or the RC Supervisor only.  Upon receipt of an update, the RC must call and verify the information to ensure accuracy prior to making the update.  The RC must make an effort to talk to the highest ranking official of the agency to verify the information.  The RC must also inquire if the agencies retention dates/method of contact applies to appeals as well as Operations and makes note in the Contact List if the agencies will assist Appeals in the same or a different manner.  Upon verification, the RC will update the Contact List, the Temporary Ops Map and Court Manager database.  All temporary changes must be updated to the Contact List, the Temporary Ops Map and Court Manager database and changed back to the original contact information upon notification from the agency. The Contact Lists, the Temporary Ops Map, and Court Manager database must mirror each other and be updated simultaneously.

1. To update a Contact List:
    a. Open SharePoint by double clicking on the SharePoint Icon on your desktop and use your own preferred method to open States and Territories
    b. Click on the state or territory name you intend to update
    c. Place cursor on the state contact list to create a box around the selection and click on the drop down arrow to the far right of the box
    d. Click Check Out
    e. Click on the state contact list name again to open the document
    f. Click the blank square in the upper left corner to the left of column A and directly over row 1 to highlight the entire document

4

## SUBJECT TO PROTECTIVE ORDER

FBI-00000347

g. Click on the drop down arrow of the highlight icon on the toolbar and choose none to take away the highlighting from previous updates
   i. All previous highlights on the document must be removed with the exception of any updates made on the same day
h. Using your preferred method (i.e., Find & Replace or scrolling) locate the agency to be updated
i. Update the agency information and highlight the cell in green. (If you have multiple updates, highlight each update as they are made.)
j. If the agency does not have a fax number, place "No fax machine" in the fax field
k. All agencies requiring a mass contact must be noted in the comments section with instructions to refer to NICS SOP 5.5.5 for instructions on how to send a mass contact.
l. When updating the comments section of the contact lists, please utilize the language as approved in the Approved Language for Contact Lists Comments Section (this document can be accessed from the Region Coordinator Folder or from this link (Approved Language))
m. When the changes have been completed and the date along with RC initials updated, save the document. When prompted to check the document in and enter comments, it is mandatory to enter each county and agency which has been updated.

2. To update the Temporary Ops Map:
   a. Open the state contact list and Save a copy of the contact list to your desktop
   b. Open the Temporary Ops Research Map from your desktop
   c. Click on the state to update
   d. A window titled "Temporary State and Federal Contacts" will appear.
   e. Leave the above window open and click anywhere on the Temporary Ops Map to bring the map to the front and then hit Esc to close the window
   f. Click on the copy of the contact list saved to your desktop and drag the icon to the window and drop the file over the folder with the state name to be updated
   g. A window will appear asking if you would like to replace the existing file.
   h. Click Yes and the close the window

3. To update the Court Manager:
   a. Open Court Manager by double clicking the Court Manager Icon on your desktop
   b. Click on United States, Canada or United Kingdom
   c. Double click on the state to be updated
   d. Place the cursor on the line between the name and type and drag to the right to view the entire agency name
   e. Scroll down the list and locate the agency to be updated
   f. Double click on the agency and make the update

5

## SUBJECT TO PROTECTIVE ORDER

FBI-00000348

    g.  All updates of phone and/or fax numbers must contain dashes as shown in the example listed below
         i.  000-000-0000
    h.  Once the update is made click apply and then OK to save the update and exit
    i.  All Mass Contacts must be entered into Court Manager using the fax number of 304-625-0000

4.  To add a new contact to Court Manager:
    a.  Open Court Manager by double clicking the Court Manager Icon on your desktop
    b.  Click on United States
    c.  Double click on the state to be updated
    d.  Right click on the state name, go to New, and then Contact
    e.  Enter the agency name (First name and Display Name)
         i.  Agencies must be entered with the following format and by using the following examples:
        ii.  State_County (name spelled out)_Co (county abbreviation if applicable)_Agency Name
             1.  TX Bexar Co District Clerk (court agency)
             2.  TX Bexar San Antonio PD (police department)
             3.  TX Bexar Co SO (sheriff's office)
             4.  TX POC (state POC)
    f.  Click Next
    g.  Click Modify
    h.  Click SMTP
    i.  Click OK
    j.  Enter the e-mail address (agencyname@nics.cjis.fbi.gov )
    k.  Click apply, then OK
    l.  Click Next
    m.  Click Finish
    n.  Find the new contact and double click
    o.  Add all of the new information required on the specified tabs as follows (be sure to complete each of the following fields to ensure WFD will populate the fax forms correctly):
         i.  General Tab
             1.  Office (Contact Preference, Retention information, and if notes will be added type in *See Notes*)
             2.  Telephone (must be entered using dashes (if no telephone number is available leave blank))
             3.  E-mail (agencyname@nics.cjis.fbi.gov)
        ii.  Address Tab
             1.  State/Province (the state name must be entered—do not abbreviate, it prohibits WFD from populating)
             2.  Country/Region (United States must be entered)

6

## SUBJECT TO PROTECTIVE ORDER

FBI-00000349

        a.  Only enter the agency's complete address if it is available, otherwise only enter the state name and United States (if using a PO Box, it must be placed in the street address field without the use of periods and PO spelled out as Post Office for WFD purposes)

    iii.  Telephone Tab
1. Fax (must be entered using dashes)
2. If the agency's fax number is missing leave blank.
3. If the agency does not have a fax machine, leave the fax field blank and enter "No fax machine" in the notes field
4. Notes (if applicable (ex. If the contact list states to check a website prior to faxing, this would be entered into the notes field)

    iv.  Organization
1. Title (enter the ORI of the agency using caps for the state; ex. AZ, TX, NM, etc)
2. Company Name (enter the agency name as it needs to appear on the fax coversheets)

    v.  Exchange General
1. Alias (enter the name for the attention field).  If no name, enter Records.

  p.  Once all information has been entered click apply, then OK

## 12.4.1 E-mail Requirements

The following guidelines will be used by the RCs when sending an e-mail.  The RC Supervisor must be copied on all e-mail regarding RC job responsibilities.

1. When the RC is e-mailing an Examiner, the RC must copy the supervisor.  If the supervisor is out of the office, copy the Area Supervisor as well.
2. When the RC is e-mailing an update involving research within a specific region, include the Primary and Secondary Region Examiners.
3. When the RC is e-mailing an update involving research which will affect all states, e-mail the entire section.
4   RCs will not e-mail contact list updates unless there are behind the scene issues warranting a reminder.
5   The Legal Research and Analysis Team (LAT) Supervisor, RC Supervisor, and the back up RC must be copied into all e-mails sent to LAT.
6   Process changes must be sent via e-mail through the chain of command which consists of RC Supervisor, NLU Unit Chief, and the Section Chief.
7   An e-mail must be sent at least two weeks prior to the region meetings to the entire Section notifying of the upcoming region meeting date, time and location and to ask for any agenda items.  If the RC already has some agenda items, they must be listed in the e-mail as well.

7

## SUBJECT TO PROTECTIVE ORDER

FBI-00000350

8   All region meeting agendas must be prepared and e-mailed to the Section at least one day prior to the first scheduled region meeting.

## 12.5.1 Handoffs

The RCs must take ownership of all AAAHANDOFFs by 10 a.m. each business day. The RCs will process the handoffs according to the instructions entered by the primary examiner unless directed by the RC Supervisor or NLU chain of command to unassign the handoffs to the Delay Queue. Please ensure all of the following are correct when reviewing AAAHANDOFFs:

a. Review all handoffs making sure the handoff instructions are correct. For example, the Examiner is contacting the correct agencies, following the contact lists and/or the information pages, etc. If the handoff instructions are not correct, the RC will process the handoff per NICS SOP.
b. If the handoff cannot be completed and faxes must be sent which would make the transaction a 3rd business day denial, do not return the transaction to the original examiner, send the faxes, and place the transaction in handoff to check for returned faxes and apply the 3rd business day denial.
c. If the Examiner placed the transaction in AAAHANDOFF instead of RFC, do not unassign to the queue. Place the transaction in RFC.
d. If the primary RC is out of the office, the back-up RC is responsible for reviewing and unassigning the AAAHANDOFFs.
e. If the primary RC and the back-up RC is out of the office, the back-up RC's back-up will process the handoffs.

## 12.5.2 Handoffs (Unassigning to the Delay Queue)

The RCs will only unassign the AAAHANDOFFS if directed to do so by the RC Supervisor or NLU chain of command. If the RCs are directed to unassign the handoffs to the Delay Queue, please ensure all of the following are correct when reviewing AAAHANDOFFs:

a. Review all handoffs making sure the handoff instructions are correct. For example, the Examiner is contacting the correct agencies, following the contact lists and/or the information pages, etc.
b. If instructions are incorrect, revise the instructions in the comments.
c. After the instructions are verified, place "Reviewed for handoff" in the comments on each case.
d. If the transaction was placed in handoff incorrectly and further research is required, correct the handoff instructions.
e. If the primary RC is out of the office, the back-up RC will review and unassign the AAAHANDOFFs.
f. Each RC must ensure all handoffs are pulled from the Delay Queue by noon if unassigned. If the handoffs are still in the Delay Queue at noon, advise the RC Supervisor.

8

SUBJECT TO PROTECTIVE ORDER

FBI-00000351

**12.6.1 Historical File**

All RCs must save documents to the historical file for information sharing purposes and as a point of reference.

Documents for the historical file include, but are not limited to:  e-mail, tasks, letters from courts, bills, etc.

Please utilize the following path to locate the historical file:

1. Located on SharePoint.  Go to Sites, All Items, RC Work Folder, and then Historical File
2. Click on the file or create a new folder to save your documents under
3. Click upload document, then browse, look under my documents, and click on the file
4. The file should appear next to the browse button click save and close
5. If same topics exist, merge documents instead of saving as two separate files

Please utilize the following instructions when scanning documents to be saved into the Historical File:

1. Go to start
2. Programs
3. Fax COM
4. Fax COM Viewer
5. Place document in scanner and click on the scan button in the top left corner, then click scan
6. Save the document in "my documents" folder

**12.6.2 Instructions on saving documents from task in Outlook and E-mail**

1. When documents are located in a task or e-mail, copy and paste into a word document, copy and paste into the historical file and save or save the e-mail/outlook into my documents and then upload.

**12.6.3 How to move a folder and place into another folder**

1. Open historical file
2. Select folder wanting to be moved
3. Go to Explore View
4. Right Click on folder
5. Select Cut
6. Go to where you want to move the folder
7. Go to Explore View
8. Select Paste

9

SUBJECT TO PROTECTIVE ORDER

FBI-00000352

**12.6.4 Placement of documents into the Historical File.**

1. **Arrest Charges:**  Place all charge information under arrest charges per state
2. **Contact Information:**  Place all contact information for each state
3. **Contact Information for POC States:**  Place all contact information, such as, phone number, fax number, and e-mail address
4. **DUI Processes:**  Add coding/spacing issue, statute verifying whether alcohol, alcohol/drugs, can be applied
5. **E-MAILS Sent to the NICS Section:**  Add e-mails with instructional or changes to process that affects the NICS Examiners.  The RC sending the e-mail will be responsible for placing into the historical files.
6. **FBI NICS Questionnaire:**  Place any questionnaires sent to the states, such as, contact preference.
7. **Federal:**  Place all Federal information
8. **Foreign Convictions:**  If Foreign Conviction information is listed on the state information page, Do Not add to this folder.
9. **MCDV:**  Add any documentation or opinions concerning MCDV.  Do not add state specific issues; add those to the Arrest Charge Folder.
10. **NICS Processes:**  Add any processing information
11. **ORI:**  Add dummy or duplicate ORIs
12. **Pardon and Restoration of Rights:**  Place all information concerning pardon and restoration of rights for each state
13. **Proposals:**  Place any proposals created and or any studies
14. **Reach:**  Place all agenda items, action items, and notes concerning the Reach Conference by year and state
15. **Record Retention:**  Add all record retention documents received for each state
16. **Sexual Offender Registry:**  Add information concerning policies
17. **State Abbreviations:**  Add abbreviations under each state
18. **State Processes:**   Place all state processing instructions
19. **State Prohibitor:**  Add all state prohibitors
20. **Terminology:**  Add all terminology terms received from the state and LAT
21. **Uncooperative Letters:**  Add all uncooperative letters received from agencies requesting a fee or refusal to assist NICS
22. **Websites:**  Add any documentation from an agency which directs the NICS to utilize a website; also add any approved websites and any which were not approved
23. **Unit Task:**  Add any task assigned by RC Supervisor or Lead given to the whole team.  The lead will be responsible for placing into the historical file
24. **Do not add any additional folders without contacting the Historical File Lead.  If unsure where information should be placed, contact the Historical File Lead.**

**12.7.1 Contacting LAT**

If a legal/statute change is needed or requested to the Terminology Pages/Information Pages/DV Charts/Pardon and Restoration of Rights pages, the RC must e-mail the

10

SUBJECT TO PROTECTIVE ORDER

FBI-00000353

appropriate LAT member requesting the change and copy the LAT Supervisor and the RC Supervisor.

Please note, LAT cannot provide any processing decisions.  All processing decisions must be forwarded through the NLU chain of command.  If approved by NLU chain of command, it will be forwarded to NOU.

All Terminology Pages/Information Pages/DV Charts/Pardon and Restoration Pages etc. updates/changes received from LAT to review must be reviewed the same day received. These documents must be reviewed to ensure the following:

1. Review the document and determine if the Examiners will be able to understand and apply the update/change to their transactions.
2. Ensure the updater's initials and date is placed beside the update/change and highlighted in yellow.
3. Any changes in processing must be identified and forwarded through the chain of command for approval.

If a discrepancy is found or clarification is needed with the update/change, the RC must follow up with LAT.  No updates will be made unless legally validated by LAT.

### 12.8.1 Mass Contacts

Mass Contacts must be completed daily.  In the absence of the RC, the secondary back-up RC is responsible for completion.  If both the RC and secondary back-up RC is out of the office, the tertiary RC back-up is responsible for completion.
The RC will retrieve their mass contacts from the Dispositions folder located on Outlook e-mail on PC Client.  The Dispositions folder must be checked several times daily to ensure these requests are being processed.  The RC must enter comments into the transactions indicating the information was received and if applicable forwarded to the outside agencies.  This includes websites.  The RC is responsible for keeping the back-ups informed of the mass contacts.

To locate the dispositions folder on PC Client Outlook please perform the following:

1. Open Microsoft Outlook
2. If not displayed, Click on Folder List icon on the bottom left of the screen
3. Click on the + sign by the All Public Folders folder
4. Click on the Dispositions folder to open
5. Print any mass requests for the region being worked
6. Delete all printed requests prior to exiting the folder

All e-mail mass contacts must be processed using the RC group account on LEO.  The RC group account Logon ID is        (H)        and the password is            (H)
                            Unless otherwise requested by the outside agency, the RCs  must include all information from the R-84 and the type of information needed (for example

11

## SUBJECT TO PROTECTIVE ORDER

FBI-00000354

final disposition, conviction level, probation information, etc.). The RC must check this account periodically for the responses each day. Upon receipt of the response the RC must forward the response to the examiner requesting the information.

The RC is responsible for ensuring their mass contact information is entered in the Mass Contacts section of the RC database. This also includes any new Mass Contacts obtained.

1. From your desktop, open Docs on NFP/NICS/Operations/RCs/RC Reporting/Statistics/RC Database
2. Select the Mass Contacts button from the main switchboard
3. Complete the appropriate fields and then exit the access database

The Mass Contact section includes the following data fields.

1. Region  (Region 20 represents Federal and Region 21 represents Military)
2. State
3. County (If applicable)
4. Agency
5. Type of Mass Contact
6. Contact Information including passwords, addresses, phone numbers, etc.
7. Access
8.  Instructions

Each RC must ensure all of the RCs can access or complete requests at any given time.

## 12.9.1 Region Meetings

Each RC will conduct region meetings on a quarterly basis as long as the delay queue is at a manageable level. Each RC will conduct two meetings in the same week to encompass all shifts and RDOs. Each RC will coordinate with the RC Supervisor by noon on the day of the meeting to determine if the delay queue is at a manageable level to have the scheduled region meeting. All region meetings will be scheduled and conducted utilizing the following criteria:

1. Each RC must reference the Region Meeting Calendar to ensure multiple region meetings are not held on the same day.
2. Region meetings will take place on two different days of the week beginning at 3:15 p.m. so all shifts are covered.
3. Each RC must contact the NLU Management Program Assistant (MPA) at extension 57373 to schedule the NICS Conference Room or the Facilities Management Unit at extension 52341 to schedule a location outside of the NICS Section.
4. The region meetings must not be held during known high volume delay periods (i.e., first/last 2-3 days of each month due to increased pawn shop activities and during scheduled supervisory meetings).

12

SUBJECT TO PROTECTIVE ORDER

FBI-00000355

5. If a Region Meeting has to be cancelled after coordinating with the RC Supervisor, the Region Meeting Calendar located in SharePoint under Region Sites must be updated to reflect the cancelled meeting and the reason for cancellation.
6. An e-mail must be sent at least two weeks prior to the region meetings to notify the Section of the upcoming region meeting date, time and location and to ask for any agenda items. Each RC must include all slated agenda items as well as any SOP Modifications which will affect day to day work processes.
7. Each RC must forward any agenda item needing legal clarification, interpretation or questions for LAT to the appropriate LAT team member prior to the meeting and work closely with LAT to ensure accurate information is passed on to the Section.
8. Prior to providing any processing direction, each RC must work closely with the RC Supervisor to ensure accurate direction is passed on to the attendees.
9. An agenda, including previously known items as well as new submissions, must be prepared and e-mailed to the section at least one day prior to the first scheduled region meeting.
10. Packets relating to the agenda will be prepared and organized prior to the region meeting.
11. Each RC must circulate an attendance sheet during the meeting to show attendance.
12. If a Region Meeting is cancelled due to the delay queue volume, the RC will e-mail the responses to the agenda items to the region utilizing the Region Meeting Minutes format found in the next section. The RC will also cover the agenda items from the cancelled meeting at the next scheduled meeting.

## 12.10.1 Region Meeting Minutes

The Region Meeting Minutes will be taken by each RC and must be completed within a week after the Region Meetings are held. The Region Meeting Minutes must be typed in Microsoft Word and include the following:
1. The first three lines must be centered on the page and show the document title in the following format:
   a. Region (number) Meeting Minutes
   b. RC (name)
   c. Meeting Dates and Time
2. Those in attendance and not in attendance must be sorted and placed in three columns directly under the document title.
   a. Do not note the reason for those Examiners not in attendance.
3. Next include all topics discussed including questions and answers.
4. All action items must be documented at the end of the minutes.
   a. The RC is responsible for updating the Region Meeting Minute Action Items upon completion.
   b. The completed Region Meeting Minute Action Items must be highlighted in green once updated along with RC's initials and then uploaded to SharePoint by the RC.

13

SUBJECT TO PROTECTIVE ORDER

FBI-00000356

5. The RC preparing the minutes must add a footer with their initials and the date completed.
6. Upon completion the minutes must then be forwarded to the RC Supervisor for review and approval.
7. The RC Supervisor will forward the minutes to LAT for review and return the approved minutes back to the RC to upload the minutes to the Region Site on SharePoint.
8. If a Region Meeting is cancelled minutes must still be added to SharePoint. These minutes need to include the statement "No meeting was held this quarter" followed by the reason the meeting was cancelled.
9. The Region Meeting Minutes must be saved in SharePoint using the following format:
   a. Region (number) Month Year  (ex. Region 1 June 2008)
10. The Region Meeting Calendar located in SharePoint under Region Sites must be updated to reflect the cancelled meeting and the reason for cancellation.

## 12.11.1 SharePoint Mandatory Alerts and Keywords

All RCs and Temporary Duty (TDY)/Apprenticed RCs are required to set the following Mandatory Alerts on SharePoint.  All Alerts must be set for Immediate or Daily notification at a minimum.

1. All NICS SOPs and Quality Alert must be set for a Daily Alert notification
2. All documents under NICS States and Territories must be set for a Daily Alert notification.
   a. An Immediate Alert must be set for RC's primary region and a daily alert must be set for RC's secondary region
3. Region Sites including events, announcements, and discussion boards must be set for an Immediate Alert for the RC's primary region and secondary region.
   a. All other selections must be set for a Daily Alert.
4. The RC Work Folder and all documents within must be set for an Immediate Alert.

## 12.11.2 SharePoint Keywords and New Documents

When an RC creates any new document to be added to SharePoint that are determined to be "searchable", it will be up to the RC to notify Connie Shaffer to add the document to the keyword category it fits under.  The keywords category is the document type not title.

The complete up to date keyword list is available on SharePoint.

## 12.12.1 Reports/Statistics

The following guidelines will be followed for submitting RC Monthy Reports and Daily Statistics:

14

SUBJECT TO PROTECTIVE ORDER

FBI-00000357

1.  Monthly reports must be e-mailed to the RC Supervisor by the designated date set by the RC Supervisor each month.
2.  Statistics must be entered into the RC Database on a daily basis.
3.  The RC Database is located on DOCS on NFP.
    i.   Open DOCS on NFP folder located on the Desk Top
    ii.  Open NICS Folder
    iii. Open Operations Folder
    iv.  Open RC Folder
    v.   Open RC Work Folder
    vi.  Open RC Database
    vii. Select Daily Statistics
        i.  Enter RC Name and all appropriate statistics
        ii. Do Not Enter "0" for any of the statistics.  Just leave the space blank.
4.  To verify statistics have been entered:
    i.   Select the form you want to review on the main switchboard in the RC Database (Daily Statistics, Websites, Mass Contacts)
    ii.  Click on Edit Records
    iii. Right click on the tool bar that states Daily Statistics and choose Datasheet view
    iv.  Highlight your name and select filter selection.

## 12.13.1 Two-Business-Day Reviews

All RCs are required to process Two-Business-Day Reviews daily unless otherwise instructed.

The RC will review at a minimum, one transaction per examiner and also including NAU employees having ownership of second business day transactions unless directed otherwise by the RC Supervisor.  The RC will review 100 percent of all owned second business day transactions on new examiners completing the CJIS Training Advisory Process Unit (CTAP) part of class or other examiners designated by NICS Management until directed otherwise by the RC Supervisor. The RC must check the delay queue daily for their assigned region to obtain all transactions in the second business day time frame. The RC will perform a complete review of the transaction and enter the transaction into the NOU Workforce Evaluation System (WES) database.  If the RC is out of the office due to their scheduled RDO, the Two-Business-Day Reviews for their assigned region will not be completed.  If the RC is out of the office due to leave, travel, training, etc., during a scheduled work day, the backup RC will perform the Two-Business-Day Reviews if workloads of the backup RC permits.

Please utilize the following instructions to obtain the transactions to perform Two-Business-Day Reviews upon:

1.  Open the Delay Queue Monitor on the NICS
2.  Select the specific region to obtain the work from and click Display Data
3.  Select the region number tab at the bottom of the next screen

## SUBJECT TO PROTECTIVE ORDER

FBI-00000358

4. Click on the column labeled Owner and then Age to sort the delay queue into second day work

The RC must ensure all of the following criteria are correct and in accordance with NICS SOPs when performing Two-Business-Day Reviews:

1. Review all database hits in the transaction to ensure a correct ident/nonident decision has been made on each.
   a. If all descriptive data matches and there is no question on the ident a discrepancy will be issued.
   b. If ident/nonident decision is questionable a discrepancy will not be issued.
2. If a case contains federal/military charges only, forward to Federal RC for review.
3. Review all criminal history records to ensure all possible federal/state prohibitors are being researched.
4. Review the comments to ensure the Examiner has documented all possible federal/state prohibitors.
5. Review the comments to ensure all in-house systems and websites have been checked and if needed the III Pointer has been forwarded.
6. Compare the Examiner's comments to the State/Federal Contact Lists and Information Pages to ensure all applicable agencies have been contacted and phone/fax numbers have been documented correctly.
7. If information has been received from ~~an~~ outside agencies ensure it has been routed appropriately to have the record updated.
8. Once all information has been reviewed the RC will place the comment "reviewed" in each transaction.
9. If any of the above are found to be incorrect or not completed, the RC will notify the Examiner to perform the appropriate changes or additional research.
10. If a discrepancy is found which will immediately change the status of the transaction (such as a disqualifier on the record) during a Two-Business-Day Review, the RC will adhere to the following:
    a. If the Examiner being reviewed is on night force or on their RDO, the RC will complete the transaction in their absence.
    b. If the Examiner being reviewed is working, the RC will notify the Examiner to take the appropriate actions. The RC will monitor the transaction to ensure it is completed in a timely manner.
11. If during the two day review a Personally Identifiable Information (PII) issue is found, the RC will notify the examiner via e-mail and copy the examiner's supervisor of the finding.

The RC must enter each review into the WES. The reviews must be entered into this database following the procedures set forth in the NICS SOP QC Policy.

1. Open the WES located on your desktop
2. Select Enter a new NTN from the main switchboard screen
3. Once in the Entry Form enter the following information:
   a. Type of Review

16

SUBJECT TO PROTECTIVE ORDER

b. Reviewer
c. NTN
d. Region of NTN
e. Status
f. Click Next Record if no discrepancy exists, if a discrepancy exists continue to the next step
g. Click the box marked Discrepancy Noted
h. Click the drop down arrow on the box marked Type of Discrepancy and select the appropriate category
i. Enter comments in the RC Comments section
    i. All discrepancies issued must be supported from the SOPs, Information Pages, Contact List, etc., if possible.
**j.** Periodically check the transaction to ensure the reason for the discrepancy has been addressed. If the discrepancy has not been addressed, notify the RC Supervisor.

### 12.14.1 Uncooperative Agencies

When correspondence is received from agencies advising they will no longer assist the NICS Section or a bill is received, the RC will place a call to the agency to try and obtain assistance or have the fee waived. The RC must make an attempt to speak to the highest ranking official of the court or law enforcement agency.

If the RC is unable to gain the assistance of the agency or to have the fee waived, contact the Administrative Office of Courts (AOC) and add the information to the Uncooperative Agencies Spreadsheet. If the agency is already present in the database, add the information to the follow-up column including a brief description of what the letter or bill states, the date the letter or bill was received, and include the name of the person (along with title if applicable) spoken to from the agency. If the agency is not present in the database, add the agency to the database. The RC must forward a copy of the letter or bill to the RC Supervisor and the NICS State Support Team (NSST) Supervisor. The RC Supervisor may then assign a task to the RC for follow up at the request of the RC.

The RC on a yearly basis must compare the state contact lists in their region with the Uncooperative Agencies Spreadsheet to ensure all agencies not assisting or charging a fee are listed in the database. Each season during low volume times, the RCs must contact all agencies from the Uncooperative Agencies Spreadsheet in their assigned region in an attempt to gain assistance or have the fee waived and update the database.

The NSST Supervisor will forward the letter or bill received from the agency to an employee of the NSST. The NSST will attempt to gain assistance from the agency. If assistance is gained or the fee waived, the NSST will notify the RC to update the Uncooperative Agencies Spreadsheet. If assistance cannot be gained or the fee waived, the NSST will forward the letter from the agency to the NICS Writer/Editor. The NICS Writer/Editor will draft a letter and forward to the state. The RC will update the Uncooperative Agencies Spreadsheet. A copy of the letter is kept by the NSST.

17

## SUBJECT TO PROTECTIVE ORDER

1. To add an agency to the Uncooperative Agencies Spreadsheet:
   a. The Uncooperative Agencies Spreadsheet is located on Sharepoint under the Region Coordinator Section.
   b. Open Sharepoint and then click on the drop down arrow to the right of the Region Coordinator section
   c. Select NICS State and Federal Contact Information from this drop down
   d. Open the Uncooperative Agencies Spreadsheet found in the menu on the left side of the screen
   e. Check the document out
   f. Enter information into each field of the database
   g. In the follow up column include a brief description of what the letter or bill states, the date the letter or bill was received, and include the name of the person (along with title if applicable) spoken to from the agency.
   h. Save the changes
   i. Close the document and check the document back in
2. To update an agency in the Uncooperative Spreadsheet:
   a. The Uncooperative Agencies Spreadsheet is located on Sharepoint under the Region Coordinator Section.
   b. Open Sharepoint and then click on the drop down arrow to the right of the Region Coordinator section
   c. Select NICS State and Federal Contact Information from this drop down
   d. Open the Uncooperative Agencies Spreadsheet found in the menu on the left side of the screen
   e. Check the document out
   f. In the follow up column include a brief description of what the letter or bill states, the date the letter or bill was received, and include the name of the person (along with title if applicable) spoken to from the agency
   g. If the agency is going to begin assisting or waive their fee highlight the agency entry gray.
   h. Cut the line from the spreadsheet and the copy the line into the Tab labeled Assisting
3. **DO NOT DELETE ANY AGENCY FROM THIS DATABASE**
4. If applicable, all changes made to the Uncooperative Agencies Spreadsheet must also be made to the state Contact List, Information Page, and court manager.

## 12.15.1 Websites

1. RCs must submit all websites found or obtained to LAT for approval prior to releasing to the Section for use.
2. Please provide the following information to LAT:
   a. Website address
   b. Copy of the disclaimer if available (if unavailable LAT will contact the agency for the disclaimer)
   c. State
   d. County (if applicable)
   e. Agency ORI (if applicalble)

18
## SUBJECT TO PROTECTIVE ORDER

FBI-00000361

   f. Website instructions

Once submitted to LAT for review, the RC will add the website to the "RC Database" with the status as "Sent to LAT"

1. From your desktop, double click on: Docs on NFP/NICS/Operations/RCs/RC Reporting/Statistics/RC Database
2. Select the "websites" from the main switchboard.
3. Complete the appropriate fields and exit the access database.

The Legal Administrative Specialist will send an e-mail notifying if the website was approved or not approved.  The RC will then update the status of the website to the RC Database.

If it is a statewide website, add "yes, see website matrix" to the State Contact tab.

If it is a county website, add it to the contact list and court manager.

If a website password changes, the new password must be given to the LAT Representative to have updated on the Website Matrix.  The RC must either walk the new password to the Legal Administrative Specialist or call LAT with the new password.  No website password changes may be sent via an e-mail or e-pop due to security restrictions.  If the RC chooses to do so, an e-mail or e-pop may be sent section wide after LAT has made the update to notify of the change but the notification can only direct examiners to the Website Matrix to obtain the new password.

The RC must never be signing any documents to obtain access to a portal site.  When a website requires a signature for account access or to have a log on assigned, please forward the website to LAT for approval due to potential legal issues and review.

If a website has been denied due to the disclaimer, please contact the court and request their preference for contact if unknown.  If the court insists on using the website, forward the contact information for the court to LAT to attempt to obtain a written statement from the court regarding the records found on the website.

SUBJECT TO PROTECTIVE ORDER

FBI-00000362