# EXHIBIT G

**Weil, Gotshal & Manges LLP**

2001 M Street, NW Suite 600
Washington, DC 20036
+1 202 682 7000 tel
+1 202 857 0940 fax

**Holly E. Loiseau**
+1 (202) 682-7144
holly.loiseau@weil.com

Via Electronic Submission through
eFOIPA Portal

July 16, 2021

Director
Office of Information Policy (OIP)
United States Department of Justice
441 G Street, NW
6th Floor
Washington, DC 20530

**Re: FREEDOM OF INFORMATION ACT APPEAL – FOIPA REQUESTS 1451131-000 and 1471421-000**

Dear Sir or Madam:

     On April 19, 2021, the Federal Bureau of Investigation (the "FBI") denied the Brady Center to Prevent Gun Violence's (the "Brady Center") requests for a fee waiver ("Fee Waiver Denial") in connection with FOIA Requests 1451131-000 and 1471421-000 (the "FOIA Requests"). Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), 6 C.F.R. § 5.9(a)[IH4], the Brady Center hereby appeals the FBI's Fee Waiver Denial. For the reasons explained below, the FBI's initial Fee Waiver Denial should be reversed, and the FBI should grant the Brady Center's requests for a fee waiver for the FOIA Requests.

## BACKGROUND

     On October 29, 2019, the Brady Center submitted FOIA Request 1451131-000 ("NICS SOP FOIA Request"), requesting the production of the standard operating procedures governing the gun purchase background check process. On July 22, 2020, the Brady Center submitted FOIA Request 1471421-000 ("NICS COVID-19 FOIA Request"), requesting information regarding statistics for processing times of background checks and policy decisions relating to staffing of NICS examiners during the "COVID-19" pandemic. Both requests included a request for a fee waiver, both of which were denied on April 19, 2021. The letters denying the request for a fee waiver stated that the Brady Center "failed to demonstrate that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government." Denial Letter, FOIPA Request No. 1471421 (Apr. 19, 2021); Denial Letter, FOIPA Request No. 1451131 (Apr. 19, 2021) (collectively "Denial Letters"). The Denial Letters did not state that the Brady Center's requests were denied on the basis that the requests were "primarily in the commercial interest of the requester." *Id*.

# ARGUMENT

The FBI erred in denying the Brady Center's applications for a fee waiver because the requests clearly meet the requirements to qualify for a fee waiver under the FOIA statute, related regulations, and relevant case law. Under the FOIA statute, requesters qualify for a fee waiver if the request "is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii). The FBI has promulgated related "regulations to structure its discretion under this fee waiver provision." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 35 (D.C. Cir. 1998), as amended (Mar. 3, 1999) (citing regulation 28 C.F.R. § 16.11(d)). The fee waiver requirements of FOIA are to be liberally construed in favor of waivers for noncommercial requesters. *Clemente v. F.B.I.*, 741 F. Supp. 2d 64, 75 (D.D.C. 2010).

## I. The Brady Center's FOIA Requests Satisfy the Public Interest Requirement.

The FBI erred in denying the Brady Center's applications for a fee waiver on the basis that the requests "failed to demonstrate that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government." *See* Denial Letters. To the contrary, as demonstrated below, the Brady Center's FOIA Requests will contribute significantly to the public's understanding of the operations and activities of the government, specifically providing information and context for the process of background checks conducted by the FBI for individuals who attempt to purchase a gun from certain dealers.

The following factors are considered by courts in determining whether "disclosure of the information . . . is likely to contribute significantly to public understanding" of government operations or activities: (1) "[w]hether the subject of the requested records concerns 'the operations or activities of the government'"; (2) whether the records sought are "'likely to contribute' to an understanding of" those government activities; (3) whether disclosure would aid the understanding of "a reasonably broad audience of persons interested in the subject"; and (4) whether any such contribution to public understanding would be "significant." 28 C.F.R. § 16.11(k)(2)(i)-(iv). Measuring the contribution to public understanding turns upon "the degree to which 'understanding' of government activities will be advanced by seeing the information; and the extent of the 'public' that the information is likely to reach." *Bartko v. United States Dep't of Just.*, 898 F.3d 51, 75 (D.C. Cir. 2018) (internal citations omitted). Each of the Brady Center's FOIA Requests meet these criteria.

*First*, there cannot be any doubt that the FBI's background check process for gun purchases is a government operation or activity. The procedures that NICS reviewers follow in order to complete those background checks and approve applications for gun purchases are an integral part of that government agency's operation or activity. Relatedly, there cannot be any doubt that the FBI's background check process for gun purchases conducted during the COVID-19 pandemic is also a government operation or activity.

*Second*, the NICS SOPs, by definition, should provide a detailed explanation of the processes and procedures by which the FBI conducts background checks. Therefore, disclosure of the NICS SOPs is certain to contribute to the public's understanding of how the FBI conducts background checks for the purposes of approving or denying applications to purchase a gun. Relatedly, the Brady's Center's NICS COVID-19 FOIA Request also meets this second criteria. Statistics on the number of background checks conducted during the COVID-19 pandemic and policy adjustments to the background check process during the pandemic provide insights into the effectiveness of the government's response to the COVID-

19 pandemic as it relates to background checks for gun purchases. Therefore, disclosure of this information will contribute to the public's understanding of how effectively the government responded to the COVID-19 pandemic and the pandemic's impact on gun sales and the number of background checks.

*Third*, disclosure of the NICS SOPs and the statistics on background checks conducted during the COVID-19 pandemic would also aid the understanding of "a reasonably broad audience of persons interested in the subject." *Id*. The Brady Center has invested considerable resources in addressing the national epidemic of gun violence. The Brady Center's efforts include educating the public by (among other things) publishing investigative reports, which the Brady Center disseminates through its active website, which appears among the top search engine results for organizations working to combat gun violence and received approximately 1.4 million total visitors since July 1, 2020.[1] The Brady Center also communicates facts regarding background checks through emails and texts to its large mailing list. These facts are more than sufficient to establish that the Brady Center has a broad audience. *See*, *e.g.*, *Fed. CURE v. Lappin*, 602 F. Supp. 2d 197, 202 (D.D.C. 2009) (fee waiver warranted where the information disseminated via "website, newsletter and chat room w[ould] inevitably trickle down from those who have sent inquiries to others who have an interest").

*Fourth*, the disclosure of the NICS SOPs and the statistics on background checks conducted during the COVID-19 pandemic will significantly contribute to the public's understanding of both how the FBI conducts background checks for gun purchases as well as the efficacy of the process before and during the COVID-19 pandemic. Public interest in the growing gun violence epidemic in the US has surged in the last several years.[2] Moreover, there have been dozens of reports regarding the dramatic increase in gun purchases during the COVID-19 pandemic.[3] The rise in gun purchases has a direct impact on the number of background check requests NICS receives and has to process. Therefore, disclosure of the information will no doubt be of significant interest to the Brady Center's broad audience as well as the public at large. The Brady Center plans to share the information obtained through its FOIA Requests widely to promote the need for reasonable and common sense gun regulations and advocate for procedural and policy changes that will enhance gun safety laws that already exist. Indeed, the Brady Center has a long history of doing exactly this. For example, a prior Brady Center FOIA request uncovered that gun lobbyists helped author a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") white paper on how the Trump Administration planned to reduce regulations on assault weapons, silencers, and gun dealers. The Brady Center prepared an investigative report on this white paper, which was picked up by the CNN.[4] The Brady Center plans to widely share

---

[1] These figures represent new and returning users, and Google analytics endeavors to avoid counting the same user multiple times.

[2] *See*, *e.g.*, *2020 was the deadliest gun violence year in decades. So far, 2021 is worse.*, THE WASHINGTON POST, (June 14, 2021), available at, https://www.washingtonpost.com/nation/2021/06/14/2021-gun-violence/.

[3] *See*, *e.g., How COVID-19 Has Made a Federal Background Check Loophole Even* Deadlier, EVERYTOWN FOR GUN SAFETY SUPPORT FUND (Apr. 13, 2020), *available at* https://everytownresearch.org/report/covid-default-proceed/; Betsy Woodruff Swan, *Blocked Gun Sales Skyrocket Amid Coronavirus Pandemic*, POLITICO (July 23, 2020), *available at* https://www.politico.com/news/2020/07/23/blocked-gun-sales-skyrocket-amid-coronavirus-pandemic- 379452; Betsy Woodruff Swan, *Blocked Gun Sales Skyrocket Amid Coronavirus Pandemic*, POLITICO (July 23, 2020), *available at* https://www.politico.com/news/2020/07/23/blocked-gun-sales-skyrocket-amid-coronavirus-pandemic- 379452.

[4] *See* Jose Pagliery, *Exclusive: Gun lobbyist helped write ATF official's proposal to deregulate*, CNN (Feb. 14, 2018), *available at* https://www.cnn.com/2018/02/13/us/gun-industry-atf-deregulation-white-paper-brady-center-documents-invs/index.html.

any information learned from these FOIA Requests in a similar manner. Such reporting activity alone should qualify the Brady Center to receive a fee waiver. *See National Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) ("[A]ny person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'").

## II.     The Brady Center's FOIA Requests Also Satisfy the Non-Commercial Interest Requirement.

The Denial Letters do not state that the Brady Center failed to meet the second requirement in order to qualify for a fee request that the FOIA request not be "primarily in the commercial interest of the requester." However, the FOIA Requests also meet this second requirement. The Brady Center has no commercial interest in the information sought in either FOIA Request.

The following factors are considered in determining whether a FOIA request is "primarily in the commercial interest of the requester": (1) "[w]hether the requester has a commercial interest that would be furthered by the requested disclosure;" and, if so, (2) "[w]hether any identified commercial interest ... is sufficiently large, in comparison with the public interest in disclosure, that disclosure is 'primarily in the commercial interest of the requester.'" 28 C.F.R. § 16.11(k)(3)(i)-(ii); *see also Clemente*, 741 F. Supp. at 75. The FOIA statute's fee waiver requirements are to "be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

As a 501(c)(3) non-profit, the Brady Center is a non-commercial requester. Indeed, one of the Brady Center's stated missions is to create a safer America by cutting gun deaths in half by 2025.[5] The requested information will be used to educate the public and further this goal, from which the Brady Center will gain no commercial benefit. Moreover, the Brady Center has submitted a number FOIA requests in the past in support of its mission, and Brady Center's status as a non-commercial requester has not been questioned. *See, e.g.*, *Center to Prevent Handgun Violence v. Dep't of the Treasury*, 49 F.Supp.2d 3, 5 (D.D.C. 1999) (Bureau of Alcohol, Tobacco, Firearms and Explosives' conceded that the Center to Prevent Handgun Violence[6] had interests that were not "primarily commercial").

## CONCLUSION

For the reasons stated above, it is clear that the Brady Center's FOIA Requests meet the requirements to obtain a fee waiver. The FOIA Requests will meaningfully contribute to the public's understanding of the FBI's background check process before and during the COVID pandemic. The FOIA Requests were also made for a non-commercial, public-interest purpose. Therefore, the Brady Center is entitled to the fee waiver requests it seeks. *See Judicial Watch, Inc.*, 326 F.3d at 1312 (The FOIA's fee waiver requirements are to "be liberally construed in favor of waivers for noncommercial requesters.").

Sincerely,

By:   */s/ Holly E. Loiseau*

---

[5] *Our Mission*, THE BRADY CAMPAIGN TO PREVONT GUN VIOLENCE, available at https://www.bradyunited.org/.
[6] The Brady Center was previously known as the Center to Prevent Handgun Violence.

Holly E. Loiseau
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW Suite 600
Washington, DC 20036
T: (202) 682-7144
F: (202) 857-0940
Holly.Loiseau@Weil.com

*Attorney for The Brady Center to Prevent Gun Violence.*

cc:  Joshua Scharff
     Tess Fardon
     Kayleigh Golish
     Amama Rasani
     Alexander Walsh